250

## In re CLEAR LAKE BEACH CO.
### No. 26484.

District Court, N. D. California, S. D.
Oct. 9, 1935.

Joe Crider, Jr., of Los Angeles, Cal., for claimant.

Keith C. Eversole, of Ukiah, Cal., for trustee.

ST. SURE, District Judge.

Fidelity & Deposit Company of Maryland, a corporation, on September 5, 1934, filed with the referee in bankruptcy its unsecured claim in the sum of $1,412.97, the correct amount of which claimant now concedes is $1,371. On May 20, 1935, the referee disallowed and expunged said claim from the record. Claimant filed a petition for review alleging, (1) "that said order is not supported by the evidence and is contrary to law," and (2) "that said claim of Fidelity & Deposit Company of Maryland is a valid and existing claim against the Bankrupt and should be allowed."

The claim which petitioner asserts against the bankrupt estate is based, for the most part, upon an extraordinary state of facts, as shown by certain stipulations entered into by counsel for the respective parties. Concisely stated, those facts are as follows:

On May 8, 1929, in the superior court of California, Los Angeles county, C. S. Ellis and D. J. Haugeberg commenced an action (No. 278001) against Clear Lake Beach Company, a copartnership, composed of R. J. Palmer and L. M. Becker, John Doe and Richard Roe; R. J. Palmer and L. M. Becker, individually. This action came on for trial on February 7, 1930, and subsequently, and on the 17th day of February, 1930, the judge of said state court made his findings of fact and conclusions of law wherein it was found that "it is true that the defendants and each of them became indebted to the plaintiffs herein on the 29th day of September, 1926, in the sum of * * * $430.00, for and on behalf of certain monies advanced to said defendants and each of them," that it was also "true that on the 2nd day of March, 1928, that the defendants became indebted to the plaintiffs * * * in the sum of * * * $326.00, for and on account of certain work and labor done and performed for and on behalf of the defendants * * *"; that it likewise was "true that on the 1st day of August, 1928, * * * the defendants became indebted to the plaintiffs * * * in the sum of * * * $100.00, for and on behalf of certain work and labor done and performed for and on behalf and for the benefit of the defendants * * *"; and "that as conclusions of law of the foregoing facts, the Court says: that the plaintiffs are entitled to judgment against the defendants in the sum of * * * $856.-00 lawful money of the United States of America together with interest on the sum of $430.00, at the rate of * * * 7% per annum, from the 29th day of September, 1926, together with interest at

the rate of * * * 7% per annum, on the sum of * * * $326.00, from the 2nd day of March, 1928; and together with interest on the sum of * * * $100.00, at the rate of * * * 7% per annum, from the 1st day of August, 1928"; a judgment, based upon the aforesaid findings of fact and conclusions of law, was made and entered on said 17th day of February, 1930. The defendants, as named in said action, appealed from the judgment, and on February 25, 1930, Fidelity & Deposit Company of Maryland, the petitioner for review herein, gave an undertaking on appeal and to stay judgment wherein it bound itself to the extent of $1,746 that in the event said judgment appealed from, or any part thereof, was affirmed, or the appeal dismissed, said appellants (defendants as named in said action) would pay to respondents (plaintiffs) the amount directed to be paid and all damages and costs awarded against said appellants. Subsequently, and on June 8, 1932, the District Court of Appeal for the Third District of California affirmed the judgment [Ellis v. Clear Lake Beach Co., 124 Cal. App. 175, 12 P.(2d) 26], and thereafter, and on July 14, 1932, the petitioner herein paid said plaintiffs the sum of $1,228.88 and received therefor a full satisfaction of judgment which never has been filed and which said petitioner herein still holds; that the amount of the interest on said sum of $1,228.88 at 7 per cent. per annum straight from July 14, 1932, to March 9, 1934, the date of the adjudication of the herein bankrupt, is $142.12, which added to the principal sum aforesaid accounts for the claim of $1,371. However, on January 12, 1932, C. S. Ellis and D. J. Haugeberg commenced an action in the municipal court of Los Angeles on the aforesaid judgment of February 17, 1930, said action being against Claire Becker, administratrix of the estate of Louis M. Becker, deceased, and Clarence W. Morris, executor of the estate of Louis M. Becker, deceased, and on July 28, 1933, a judgment was rendered in favor of said plaintiffs in the sum of $1,027.77, with interest in the sum of $238.22, and costs in the sum of $5, said judgment providing by stipulation of the interested parties that the judgment should be paid in due course of administration. Subsequent to the filing of said action in said municipal court, the plaintiffs therein, for good and valuable consideration, assigned, sold, transferred, and set over to Fidelity & Deposit Company of Maryland the cause of action set out in the complaint in said action. However, the estate of Louis M. Becker, deceased, is insolvent, and has been insolvent since September, 1931, and is unable to pay any creditor's claims.

In addition to the stipulated facts, there was offered in evidence the deposition of R. J. Palmer, taken in this proceeding on behalf of Fidelity & Deposit Company of Maryland, before a notary public, in Los Angeles, on April 16, 1935, there being no appearance by counsel or otherwise on behalf of the trustee in bankruptcy herein.

In substance, the witness testified that his name was Richard J. Palmer; that he resided at Los Angeles, Cal., at the present time; that he was the same person who was named as one of the defendants in the case entitled, C. S. Ellis and D. J. Haugeberg v. Clear Lake Beach Company, a copartnership composed of R. J. Palmer and L. M. Becker, et al.; that he had been connected with the Clear Lake Beach Company while it was a copartnership and after it became a corporation; that the copartnership had begun early in 1924, with L. M. Becker and himself as copartners; that the partnership had continued for a year and a half after the beginning of the partnership, and then, inasmuch as Mr. Becker was in an involved financial condition, it became necessary for the witness to take over the entire project, and Mr. Becker sold to the witness his (Becker's) interest and assigned to the witness all his (Becker's) rights in the copartnership; that Becker continued to be identified with the copartnership, and was employed by the copartnership to use his best efforts in assisting the witness to carry on the business and make a success of it; that the copartnership, or what might be termed the proprietorship of the witness, operating under the name of Clear Lake Beach Company, sold its assets completely to a corporation which was organized in the latter part of 1926, and was called the Clear Lake Beach Company; that all of the assets of every kind and nature, including real estate, accounts receivable, furniture, and fixtures, and assets of every description, were purchased by the corporation and

all the liabilities of the copartnership and/or R. J. Palmer proprietorship, were assumed by said corporation; that such were the terms of purchase; that they were so set forth, in the resolution of the board of directors at the time the corporation took over the assets of the business. That the minutes containing the complete record of this transaction is in the custody of the trustee in bankruptcy of the bankrupt corporation, Clear Lake Beach Company; that the date of purchase and the assumption of liabilities by the Clear Lake Beach Company, a corporation, was November 1, 1926; it being provided, however, that the corporation would not begin business officially until January 1, 1927; that the judgment in the action in the superior court Los Angeles county, No. 278001, went against the witness in the trial court; that the witness took an appeal from said judgment; that the witness applied to the Fidelity & Deposit Company of Maryland for an appeal bond; that the witness could not say that the certified copy of the application for bond to the Fidelity & Deposit Company of Maryland, in the name of Clear Lake Beach Company, a copartnership, dated February 25, 1930, signed by Clear Lake Beach Company by R. J. Palmer and Louis M. Becker, was a copy of the original; that the witness' impression was that they had signed as officials of the Clear Lake Beach Company, a corporation; that at the time the suit was begun the corporation had been in existence for something like two years; that it owned all of the assets of the former partnership, and the partnership ceased to exist at the time the corporation took over all these assets, consequently, in signing this appeal bond it was the impression that he was signing it as an official of the corporation and for the corporation, and not as or for the copartnership; that at the time the application for the bond was made the sole stockholders were Louis M. Becker and the witness; that both of them signed the application; at that time the witness was president of the Clear Lake Beach Company, a corporation, and Louis M. Becker was secretary and treasurer; that the witness was president of the corporation from its inception down until the date of adjudication in bankruptcy; that Mr. Becker was not the secretary and treasurer until he was elected a director of the corporation in 1928, and so continued until his death, July 5, 1931; that the witness was sufficiently familiar with the affairs of the estate of Louis M. Becker, deceased, to know the financial condition of the estate; that it was completely insolvent; that the witness had a claim against said estate, but never had received a 5-cent piece, and never expected to do so; at the time the action No. 278001 in the superior court of Los Angeles county was commenced the Clear Lake Beach Company, a copartnership, was no longer in existence; that the witness could not explain why the action went against himself and Mr. Becker as copartners, except that in the opinion of the witness it simply was a miscarriage of justice; that the action did not at all lie against the individuals or the copartnership, because the issues involved were all purely those of the corporation alone, and it was purely a matter of corporation business that was involved, every detail of it, and the filing of the suit against the copartnership and against the witness and L. M. Becker as individuals was probably an error on the part of counsel for plaintiffs; that the witness did not know why it was not corrected in the course of the proceedings or during the course of the trial; that the witness was aware of the fact that under its appeal bond the Fidelity & Deposit Company of Maryland was forced to pay the judgment; that demand was made upon the witness in his official capacity as president of Clear Lake Beach Company, a corporation, for the payment of $1,228 or thereabouts; that the matter was brought to the witness' attention by Mr. Joe Crider, and a number of letters were written by him demanding payment; that according to the recollection of the witness, this demand was made upon the corporation in the latter part of 1932; that the witness had explained to Joe Crider that the corporation was having a difficult time in getting along and to get enough money to meet its operating expenses, and that the corporation could not pay the judgment in cash, but that the witness suggested that inasmuch as the corporation had large assets in the way of unsold property, that it would be willing to give Mr. Crider or the Fidelity & Deposit Company of Maryland a mortgage or trust deed against several lots in the townsite of Lucerne, in order to secure payment of the obligation at a later date; that the

suggestion was agreeable to Mr. Crider; that the trust deed or mortgage on the lots was not given by the corporation; that the witness wrote a letter to Mr. F. E. Beal, in the San Francisco office of the Clear Lake Beach Company, authorizing him to carry out the agreement that the witness had made with Mr. Crider, and to have the trust deed or mortgage issued and sent to Mr. Crider; that F. E. Beal was an employee of the Clear Lake Beach Company, a corporation; that he was a man of all work around the office; that Mr. Beal acknowledged receipt of the letter of the witness and said he would proceed to have the trust deed issued and sent to Mr. Crider; that such a trust deed or mortgage would not have to be signed by the witness as president of the corporation, but would have to be authorized by him in writing; that the property of the Clear Lake Beach Company was held in trust by the Lake County Title & Abstract Company, and it would have been necessary to have instructed the Lake County Title & Abstract Company to have prepared and executed the necessary papers to carry out the agreement; that so far as the witness knew this trust deed or mortgage was never executed and delivered to the Fidelity & Deposit Company of Maryland; that the matter was overlooked by Mr. Beal for some reason; that the oversight was unknown to the witness; that to the witness' knowledge the obligation to Fidelity & Deposit Company of Maryland was not included among the liabilities that were set up on the books of the corporation due to the oversight that the witness just explained.

The schedules filed herein on behalf of the bankrupt corporation were signed by R. J. Palmer in his capacity as president and sworn to by him on the 24th day of February, 1934; these schedules failed to show that said corporation on said date was indebted to C. S. Ellis, D. J. Haugeberg, or Fidelity & Deposit Company of Maryland, in any sum whatsoever, although the said R. J. Palmer declared in the oath to Schedule A that said schedule was a statement of all his (said corporation's) debts. Furthermore, an examination of the record before the court fails to disclose any attempt on the part of the said bankrupt corporation, by amendment, to include the name of C. S. Ellis, D. J. Haugeberg, or Fidelity & Deposit Company of Maryland as a creditor of said bankrupt corporation.

While it is the law that where a surety satisfies the obligation of the principal either with or without legal proceedings, the principal is bound to reimburse the surety, it likewise is the law that the surety has no claim for reimbursement against other persons (section 2847, California Civil Code), except to the extent that a surety, satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended (section 2848, California Civil Code). Moreover, it is a well-established rule both of law and equity that, under certain circumstances, "when necessary to circumvent fraud, protect the rights of third persons, and accomplish justice," courts "will look through form to substance" (Bryan v. Banks, 98 Cal. App. 748, 754, 277 P. 1075, 1078), and, if the occasion demands it, recognize the acts of individuals as being those of corporations, and those of corporations as being those of individuals, to the end that equity and justice may be done unto all concerned.

Under the facts in the instant case, are the circumstances such that the court should brush aside the copartnership or the individuals which appear to be involved in order, in equity, to place a liability upon the corporation now being administered in bankruptcy? The referee, whose order is under review, has answered the question in the negative. If his order finds support in the evidence and is in accordance with law and the accepted principles of equity, the order must stand, and in thus holding, the court does not overlook the rule that "a surety is * * * a favorite of equity." American Surety Co. of N. Y. v. Lewis State Bank (C. C. A.) 58 F.(2d) 559, 560.

On the record herein there is no legal or equitable escape from the conclusion that the claimant surety company has failed to establish its right to have its claim allowed. No other ruling would be consonant with equity and justice in the light of all the circumstances surround-

ing the commencement of the original state court action against the Clear Lake Beach Company, the copartnership consisting of the witness and Louis M. Becker; the taking of the appeal from the judgment rendered against the defendants in said state court action, including the witness; the signing of the application to Fidelity & Deposit Company of Maryland for the undertaking on the appeal; the subsequent action on the aforesaid state court judgment in which later action, however, the witness was not made a party; the letters which were said to have been exchanged between the witness of the now bankrupt corporation and the attorney for the claimant surety company, although none of said letters, either from the witness or from said surety company, or even copies of either, were offered in evidence; the self-serving character of the testimony of the witness, and, lastly, but of great significance, the failure of the witness, under oath, to include in such schedules the name of C. S. Ellis, D. J. Haugeberg, or said surety company as a creditor of the bankrupt corporation. With regard to the greater part of the testimony of the witness Palmer, it may be said that it "is so nebulous * * * as to render it nothing more than a mere pretense of evidence * * * and therefore it may be said that, as a matter of law, it is not any evidence at all." Wenban Estate, Inc., v. Hewlett, 193 Cal. 675, 693, 227 P. 723, 730. Taken in its entirety, it is devoid of weight. This is so notwithstanding the fact that the witness was not contradicted by any other witness. As was said by Mr. Justice Field, in Quock Ting v. United States, 140 U. S. 417, 420, 421, 11 S. Ct. 733, 734, 851, 35 L. Ed. 501, "Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His

manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced."

The order of the referee will be confirmed.