[Civ. No. 2461. Fourth Appellate District.—January 16, 1940.]

ALBERT E. HARRIS et al., Appellants, v. DONALD LARTER, Administrator, etc., et al., Respondents.

588

W. M. Greathouse, C. E. McDowell and O. A. Jacobs for Appellants.

R. Y. Williams and Chas. D. Swanner for Respondents.

BARNARD, P. J.—R. T. Harris and Maria L. Harris each possessed some separate property at the time of their marriage in 1888. Pursuant to an agreement made during the early years of their marriage most, if not all, of the property then owned and subsequently acquired by them was placed in some form of joint ownership. From time to time R. T. Harris withdrew funds from a joint bank account which was established, and used the same in purchasing parcels of real property which he later conveyed to Maria L. Harris. He died intestate in 1911 and Maria L. Harris died intestate in 1933. In connection with the distribution of her estate a dispute arose between her heirs and the heirs of R. T. Harris, the latter claiming that most of the estate had come to Maria L. Harris as a gift from her husband and should be distributed to them. Upon appeal (*Estate of Harris*, 9 Cal. (2d) 649 [72 Pac. (2d) 873]) the Supreme Court passed upon the rights of the parties as affected by the joint tenancy which had existed between them and by the conveyance of the respective properties to Mrs. Harris. The court also stated that the appellant in that case had attempted to establish an agreement whereby Mr. Harris had agreed to give Mrs. Harris all of his property and she had agreed that after she had taken a good living out of it she would divide it

equally between his relatives and her relatives. The court held that such a contention must be litigated in a court of equity and expressed the opinion that such an oral agreement, if entered into prior to the amendment requiring it to be in writing, would be valid if it could be established.

Thereafter, this action was brought. The plaintiffs are the heirs at law of R. T. Harris, being his brother, sisters and the children of his deceased brothers and sisters. The defendants are the heirs at law of Maria L. Harris, being her sister and brothers. The complaint alleges that during the year 1904 Mr. and Mrs. Harris entered into an oral agreement whereby it was agreed that he would convey to her all property held or acquired by him, and that after his decease and during her lifetime she would take a good living therefrom and divide the balance of said property so that "upon her death said property would be owned equally by the family and next of kin of the said R. T. Harris and the family and next of kin of the said Maria L. Harris". Performance of the agreement on his part and nonperformance on her part is alleged, and the prayer is for specific performance of the terms and provisions of said agreement.

Laura J. Robinson, a sister of R. T. Harris, testified as to what was said by Mr. and Mrs. Harris on a day in 1904, as follows:

"After lunch—Dick wasn't feeling well that day—and he told us, he said, he spoke of the spells he was having with his heart, and he said his condition was such that he was worried about it, he thought he might pass out at any time, and he said, 'I am giving Maria all of my property and we have agreed that she shall take a good living out of the property, and other than that it shall be divided equally between her people and my people,' and Maria said she thought the agreement was very fair to all concerned, and it was all right with her."

Her husband's memory was equally good, although thirty-four years had elapsed, and he repeated this conversation in practically identical language. A nephew of R. T. Harris testified that in 1904 the Robinsons told him that Mr. Harris was turning his estate over to Mrs. Harris, that she was to use it during her lifetime, and that it was then to be divided equally among the heirs of Mr. Harris and Mrs. Harris. On

cross-examination he testified that he was not sure the word "heirs" was used, that it may have been "people", and that nothing was said as to the proportion or amount that anyone was to get. Another nephew testified to the same effect except that he said he could not remember whether the words used were "heirs" or "families" or "people". Two other witnesses testified that Mrs. Harris had told them that there was such an agreement that at her death all property "was to be divided equally between the two families".

On behalf of the defendants there was evidence that none of the plaintiffs had informed any of the defendants of the claimed existence of such an oral agreement prior to the hearing of the petition for final distribution in the estate of Maria L. Harris; that Maria L. Harris had claimed all of the property as her own at the time of a contest of her final account as administratrix of the estate of her husband, which contest was filed by a sister of R. T. Harris and one of the plaintiffs here; that Maria L. Harris had treated the property as her own following the death of her husband in 1911; that she made a will in 1915, in which she provided small legacies for several of her relatives and several of her husband's relatives, and then gave over $200,000 to various religious and charitable institutions; and that between that time and her death she made gifts in excess of $200,000 to various colleges and religious organizations. Laura J. Robinson admitted, on cross-examination, that Maria L. Harris had given her $50 a month from shortly after the death of R. T. Harris up to the time of Mrs. Harris' last illness, that she considered these as gifts, and that when a will was filed for probate, in which Mrs. Harris gave the bulk of her estate to religious organizations, the witness filed an approval and a request that the will be sustained.

The court found that during the year 1904 Maria L. Harris and R. T. Harris entered into an oral agreement whereby it was agreed that R. T. Harris would convey to Maria L. Harris all of his interest in any property held or acquired by either of them and that after his death and during her lifetime the said Maria L. Harris "would take a good living out of said property and make provisions so that upon her death the balance of said property would be divided fifty-fifty between his relatives and her relatives". The court then found

that this oral agreement was too indefinite and uncertain to be specifically enforced. Judgment was entered in favor of the defendants and the plaintiffs have appealed.

The appellants contend that the term "relatives", as used in this oral agreement, means blood relatives or heirs at law, that under section 108 of the Probate Code the use of this term vested the property in the legal heirs of Mr. Harris and the legal heirs of Mrs. Harris, and that the court erred in holding that the agreement was too indefinite and uncertain to be specifically enforced.

It may be first observed that although this agreement was entered into before the adoption of the statute requiring such a contract to be in writing there is no evidence showing that Mr. Harris made any part performance by conveying any property to Mrs. Harris before the law was so amended as to require a written contract. Before that amendment an agreement to leave property by will could be enforced in equity only upon clear, definite and satisfactory proof. (*Long* v. *Rumsey,* 12 Cal. (2d) 334 [84 Pac. (2d) 146].) In *Monsen* v. *Monsen,* 174 Cal. 97 [162 Pac. 90], after pointing out the manifest danger of fraud in permitting the course of disposition of a decedent's property to be altered by parol testimony, the court said:

"While the cases which we have cited declare the propriety of an enforcement, in equity, of contracts to make a particular disposition of property upon the death of the promisor, they all agree that enforcement will not be decreed except upon the conditions applicable to all demands for specific performance. One of these is that the terms of the agreement must be definite and certain. Section 3390 of the Civil Code, in enumerating the obligations which cannot be specifically enforced, concludes: '(6) An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable.' In *Owens* v. *McNally* (113 Cal. 444 [45 Pac. 710, 33 L. R. A. 369]), the court used this language: 'Where a contract such as this, resting in parol and sought to be enforced after the death of the other party to it, comes before a court of equity for review, it is scrutinized, and should be scrutinized, with particular care, and only upon a satisfactory showing that it is definite and certain and just will it be enforced. The

proofs of the contract should be clear, and the acts of the claimant referable alone to the contract.' ''

Not only is clear and satisfactory proof of the making of such a contract required but, since specific performance is involved, it is also essential in an action of this nature to establish the terms thereof in order that these terms be enforced. (Civ. Code, sec. 3390.)

In *Notten* v. *Mensing*, 3 Cal. (2d) 469 [45 Pac. (2d) 198], reciprocal wills executed by a husband and wife contained identical provisions for the collateral kindred of the two spouses, and the effect of an oral agreement, that upon the death of either spouse all their property should go to the survivor and upon his or her death should go to certain designated relatives of the parties, was involved. The court held that the complaint stated a cause of action but pointed out that in such a case a plaintiff must be able to show clearly the terms of the contract and that ''on the trial on the merits, the burden rests on the plaintiff to prove the oral agreement by full, clear and convincing evidence''. After trial on the merits another appeal was taken in that case. (*Notten* v. *Mensing*, 20 Cal. App. (2d) 694 [67 Pac. (2d) 734].) In that case, in support of an oral agreement between the spouses, a witness testified that she had heard the wife say, in the presence of her husband, that she and her husband had agreed to will the properties one to the other and for the use of the survivor during the latter's life, and that the survivor was to make a will at his or her death and will the property equally between the families of the spouses. In that case, as in the case now before us, the parties to the oral agreement had living brothers and sisters and also nephews and nieces, some of whom were legal heirs and some of whom were not. After pointing out that there was no evidence of any agreement as to how the property was to be apportioned among the numerous heirs of the parties and none to indicate that either of the parties desired his or her brothers and sisters to be treated equally, or his or her nephews and nieces to be thus treated, the court said: ''He who contends there was such an agreement has the burden of proving it and the scope thereof.'' The court in effect held that such an agreement, if made, was not one that could be enforced in a court of equity,

citing cases in support of the rule that such a contract must be certain and definite in all of its parts.

The only agreement established here was that Mrs. Harris should take a living out of the property in question, after which it was to be divided equally or fifty-fifty between her people and his people, or, as found by the court, between his relatives and her relatives. Section 108 of the Probate Code provides that a testamentary disposition to "heirs" or "relatives", when such terms are used as words of donation, vests the property in the legal heirs. The agreement here in question was not a testamentary disposition, and the terms "families" or "people" were not presently used as words of donation. It is contended not that a will was actually made but that there was an agreement to later make certain testamentary provisions, which agreement is sought to be specifically enforced. In such a case, the rules pertaining to agreements and to the specific enforcement thereof must control, and under the code section an agreement cannot be specifically enforced unless its terms are sufficiently certain to make the precise act which is to be done clearly ascertainable.

Assuming that it sufficiently appears that these parties agreed that upon the death of Mrs. Harris the remainder of the property should be equally divided between the two families, it neither appears that the parties intended it to go only to the legal heirs in the respective families, to the exclusion of relatives who are not legal heirs, nor, if so, that they intended that the legal heirs of each should share equally in such property. It is perfectly natural in such a case to desire and wish to provide that when the surviving spouse is through with the property a part of it shall go to the family of the original owner rather than all of it going to the family of the one to whom it was conveyed in the expectation that she would be the survivor. The real intent of such an agreement would naturally be to secure such a division between the two families and not to limit the surviving party's right to dispose of the share that is to go to her family in accordance with her desires. She might desire to give more to a needy sister than to a wealthy brother or more to a niece than to a nephew, regardless of the fact that one was an heir and the other was not. It would be unreasonable to assume that the parties had any other intention unless it was clearly

expressed. However, if the appellant's contention is correct Mrs. Harris had no such right in this case. Moreover, with respect to the other half of the property, she was similarly bound to treat all of her husband's legal heirs alike and could make no provision for those of his relatives who were not legal heirs. Undoubtedly a contract could be made in the manner here contended for by the appellants, but the contract in question is not sufficiently complete or definite to clearly disclose such an intention.

As far as appears from the contract here shown the only expressed provision is that the remainder of the property is to be equally divided between the two families or sets of relatives. No provision is made as to which members of the respective families shall share therein nor as to the proportionate share that anyone shall take. As far as here appears, Mrs. Harris could have complied with the contract found by the court to have been made, by giving half of the remainder of this property to one of her husband's heirs, by dividing it between his heirs and one of his relatives who is not an heir, or by making any one of a number of other dispositions thereof. Under the agreement here shown it cannot be said that any of the appellants is entitled to any particular share of the remainder of the property or to any share at all. The court correctly held that the agreement in question is too indefinite and uncertain to be specifically enforced.

The appellants further contend that where property is conveyed upon a particular object or trust and the purpose fails on account of an uncertain designation of beneficiaries there is a resulting trust, and that if this agreement is too indefinite to be enforced it should be held that they are entitled to the property in question by reason of its being impressed with a resulting trust in their favor as heirs at law of R. T. Harris. If it could be said that any resulting trust here appears, it cannot be said that any particular property is impressed with a trust in favor of any one of the appellants. The appellants are claiming under a contractual right and if the contract under which they claim cannot be enforced there is no way to fix or ascertain their rights as a basis for impressing any particular property with a trust. Aside from any other consideration the same uncertainty and

indefiniteness which applies to the contract would prevent a recovery under the trust theory.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 14, 1940.