[Civ. No. 3258. Fourth Dist. Sept. 26, 1944.]

WILLIAM M. PATCH et al., Appellants, v. ROBERT S. ANDERSON et al., Respondents.

(Two Cases.)

Harold A. McCabe for Appellants.

R. M. Crookshank for Respondents.

MARKS, J.—These are actions to quiet title and for specific performance of a purported contract to sell real property, and for damages. Defendants had the judgments and

plaintiffs have appealed. The actions were consolidated for trial and on appeal.

The sole question presented is whether there existed an enforceable written contract for the sale of the property. Defendants urge and the trial court found, that there was no such contract but merely an agreement to enter into a contract after additional terms had been agreed upon.

Defendants, as joint tenants, owned a 40-acre orange grove in Orange County which they desired to sell. They were residents of the Island of Molokai, Territory of Hawaii, and by a special power of attorney had authorized L. P. Nichols, a real estate broker, to effect the sale.

Plaintiffs entered into negotiations with Mr. Nichols which resulted in escrow instructions and a contract of sale being prepared which were sent to defendants for signature. The terms were not acceptable to defendants who informed Mr. Nichols of that fact by cable. This was followed by a letter signed by Robert S. Anderson, but not by his wife, and contained the following:

"My conditions are as follows:—Eliminate farming equipment from the bill of sale; Require at least annual payments of $1000.00 with interest paid semi-annually; plus 75% of net profits; Append a schedule to limit expenditures; Prorate taxes to May 1st, 1942; Include that they shall not resort to the Lemke Frazier Act in the contract of sale; expect Patch to purchase my Farm Loan Bonds.

"Should Mr. Patch meet the above requirements, you are authorized to have new papers drawn and forward for my signature, otherwise drop negotiations. . . . Personally I do not think he will be able to carry the load, consequently the collateral they are depositing with the Title Co. is of doubtful value under post war conditions. . . .

"I also expect Mr. Patch to purchase my Farm Loan Bonds, I had to buy them from Arkley that is why it was necessary for me to borrow an additional $1000.00 from him.

"If Mr. Patch's intentions are honorable, I can see no reason why he should not accede to our conditions; we believe they are fair. Should our conditions be acceptable, have new Escrow instructions as well as other necessary papers redrawn in duplicate, and submit them to a *reputable attorney to check whether or not our interests are properly protected, if so,* forward for our signatures and deposit proceeds of the bill

of sale ($11,500.00) with the Title Insurance Co.; When this has been done, Mr. Patch may take possession as of May 1st, 1942.'' (Italics ours.)

After the letter was received, Mr. Nichols met the plaintiffs who went over it and wrote on the bottom, ''Accepted and agreed to on the above basis,'' and then signed it.

As it was required that the contract be approved by an attorney, the letter and acceptance were submitted to defendants' attorney. He concluded that Mr. Anderson believed that plaintiffs were to deposit collateral to secure the performance of their obligations. They did not propose to do this and the attorney concluded that any attempted waiver of the provisions of the Frazier-Lemke Act would be contrary to public policy and unenforceable. The attorney insisted that Mr. Anderson be advised of the true situation before he would draw or approve any contract of sale. No such final contract was ever prepared and plaintiffs commenced this litigation to enforce whatever rights they obtained under the letter and its acceptance.

██ It is fundamental that there must be a meeting of the minds on the material terms of a contract before it can be specifically enforced. (*Roffinella* v. *Roffinella*, 191 Cal. 753 [218 P. 397].) The general rules on the subject are set forth in 23 California Jurisprudence 429, et seq., as follows:

''To warrant specific performance, then, the contract must not only contain all the material terms, but those terms must, in the language of the code, be 'sufficiently certain to make the precise act which is to be done clearly ascertainable.' [Civ. Code, § 3390.] If all the evidence tending to establish the contract leaves the terms thereof in doubt it cannot be specifically enforced, unless the contract, or at least that portion of it claimed to be indefinite, has already been performed. The reason that an indefinite contract cannot be enforced is because the court cannot know what the parties agreed to; meaning and intent must be placed beyond the bounds of mere conjecture by full and clear proof, for the court cannot prescribe or fix the terms and conditions to which the parties are to bind themselves. Furthermore the court must be able to ascertain the terms from the instrument itself and not be compelled to determine them from the construction put upon the contract in the pleading demanding enforcement. In other words, a complaint in specific performance cannot sup-

ply deficiencies which cause the contract to be nonenforceable in equity.''

In two particulars the letter and acceptance failed to set forth material terms of the contract, and in two others Mr. Anderson was evidently laboring under a misapprehension of the true conditions.

He specified that he was to receive, on account of the purchase price, 75 per cent of the net profits, presumably from the grove, and that there be prepared and attached to the contract to be executed a schedule of allowable expenditures in caring for it. That this was a material provision of the contract to be prepared cannot be doubted. Defendants were to have two separate sources of payments which were to be made on the purchase price; (1) the $1,000 per annum specified, and (2) 75 per cent of the net profits, to be determined after fixed and limited expenditures were deducted from gross income. It is clear that the net income could not be ascertained until the schedule limiting expenditures had been agreed upon. Thus the writing lacked certainty in failing to furnish the basis for determining the amounts of the annual payments to be made and there was no meeting of the minds of the parties on this question.

Mr. Anderson evidently intended that Mr. Patch purchase the Farm Loan Bonds. No price was fixed or agreed upon. This left that matter uncertain and subject to future negotiation.

Mr. Anderson also seemed to believe that plaintiffs would deposit collateral to secure their performance of the contract. This they did not intend to do so he was laboring under a mistake of fact in that respect. He also required plaintiffs to waive the benefit of the Frazier-Lemke Act without knowing that such a waiver would be against public policy and void.

Lastly, it clearly appears from the letter that Mr. Anderson did not intend it to be a contract between the parties, but that a formal contract would be drawn, submitted to an attorney, and if the interests of himself and wife were properly protected it would then be executed.

It has been held that whether an instrument is a contract, or merely an executory agreement to enter into a contract, is a question of the intent of the parties which must be determined by a construction of the instrument as a whole; that when the instrument leaves certain terms to be agreed upon and contemplates the execution of a final contract, it is not a

contract that can be specifically enforced. (*Pacific Improvement Co.* v. *Jones,* 164 Cal. 260 [128 P. 404] ; *Howard* v. *Burrow,* 77 Cal.App. 4 [245 P. 808] ; *Kerr Glass Mfg. Corp.* v. *Elizabeth Arden Corp.,* 61 Cal.App.2d 55 [141 P.2d 938].)

We have concluded that we do not have a final contract of the parties before us, but rather an executory agreement to execute a contract, all of the material terms of which had not been settled and agreed upon. Such a contract cannot be specifically enforced. An order denying a motion for new trial is not appealable.

The judgment is affirmed. The attempted appeals from the orders denying new trials are dismissed.

Griffin, Acting P. J., concurred.