[Civ. No. 16985.   Second Dist., Div. Two.   June 29, 1949.]

CLAUDE DICKEY et al., Appellants, v. RICHARD PATTISON et al., Respondents.

A. L. Abrahams and H. B. Cornell for Appellants.

Krag & Sweet and David T. Sweet for Respondents.

MOORE, P. J.—The question for decision is whether there is sufficient evidence to support the finding that no enforceable contract was made by the parties.

Appellant Claude Dickey is the son-in-law of respondent Amelia Pattison while his wife Edna and respondent Richard Pattison are her children.  Amelia was the owner of Lot C in Santa Monica.  It stood of record in the name of Richard. In August, 1944, a number of conversations were had among the parties concerning the purchase of Lot C by appellants.

No written terms were ever agreed upon. However, it appears to be established that a title search was ordered by Richard, and Claude paid him $1,000 on account of the purchase and thereafter contended that the price of $2,000 had been agreed upon. After appellants' demands for a conveyance of the lot had been rejected, they commenced this action. Following a trial the court determined that no contract had been made for the sale of Lot C to appellants.

Basing its findings upon the issues presented by the pleadings and upon the evidence adduced, the trial court found that (1) the sum of $2,000 was not a fair and adequate price for Lot C; (2) Richard did not agree to convey the lot for that sum; (3) possession of the lot was not delivered to plaintiffs nor did they take possession thereof or begin to make improvements thereon; (4) plaintiffs have not fully performed, nor are they willing to complete the terms of, their alleged contract; (5) Richard has no interest in Lot C but Amelia is the sole owner thereof; (6) Amelia never consented to Richard's contracting with Claude for the sale of the lot to plaintiffs for $2,000 or for a sale upon plaintiff's down payment of $1,000; (7) she never represented to plaintiffs that Richard was the sole owner; (8) she did not permit plaintiffs to take possession or to make improvements thereon; (9) plaintiffs did not rely upon statements of Richard that he owned Lot C nor were they misled by his statement of his ownership; (10) Amelia is not estopped by reason of any statement of Richard from asserting that the latter was not the true owner of the lot with the power to dispose of it; (11) also, she has not confirmed any representation of Richard that he was acting for her and she has not ratified the alleged agreement for the sale of the lot to plaintiffs.

In addition to the foregoing findings which resulted from the evidence and the allegations of the complaint, the court found the affirmative defense of Amelia to be true; that she was owner of Lot C while the title stood in the name of Richard Pattison; that on August 29, 1944, Edna and Amelia attempted to make an agreement whereby Edna as the daughter of Amelia could acquire Lot C for the immediate construction of a residence thereon; that they did not fix the total purchase price but solely by reason of parent and child relationship agreed that upon the consummation of the sale they would determine the purchase price to be paid; that the transaction was not to be considered as an investment by Edna and neither plaintiff could dispose of the lot without Amelia's consent.

The transcript discloses the numerous conversations of the parties. For this court to attempt to reconcile the testimony would be to ursurp the function of the trial court. It is not clear that there was ever definite meeting of the minds of the parties for the purchase and sale. But it is clear that their conversations left the attempted agreement in a tenuous state. The testimony of Amelia lends substantial support to the court's findings. She testified in substance as follows: I purchased Lot C to serve as a convenience to my home. The title thereto was vested in Richard with my knowledge, which fact I imparted to Claude. Richard manages all my properties. The lot was not for sale in August, 1944, but because of Edna's long illness I discussed with her the idea of her buying it and took her and showed her the view down the coast. She felt that she would feel better at the ocean than at San Gabriel. I required no deposit but Claude simply made out a check, payable to Richard as I suggested. I did not see the check until that evening after I had shown Edna a lot "a little further down" for sale at $4,000. Nothing was said about where Claude would get the money. My concern was about Edna's health. I never discussed the sale of it with Claude prior to his writing the check. He agreed to purchase the lot and gave me the $1,000. He then became displeased with it and said it was too little and he was going to buy another. But he cleared off the grass and weeds and had it surveyed. When I saw he was not pleased, I offered to return the check.

Richard Pattison testified that $1,000 was not the balance due from the Dickeys; that he did not know what the balance was; that his mother had never set any figures; that when the $1,000 check was given he did not discuss with Mr. Dickey the amount of the balance; that Claude spoke of some other payment coming along but he did not say the amount; no dates were set for other payments; they were to be made at times when it would be convenient for the Dickeys.

From the testimony of the witness Brown it was a fair inference that Lot C was reasonably worth $5,000.

From the findings and the adopted evidence it is seen that the purported agreement is shrouded in uncertainty. No sum was stipulated as the purchase price although the unnamed balance would be paid in the future at times and in installments satisfactory to appellants. Such indefiniteness is a complete barrier to specific performance. Its terms

cannot be enforced if they cannot be ascertained from the agreement relied upon. (Civ. Code, § 3390, subd. 6; *Harris* v. *Larter,* 36 Cal.App.2d 587, 591 [97 P.2d 1035].) When a purported contract leaves certain terms to be agreed upon and contemplates the execution of the provisions ultimately adopted, it is not specifically enforceable. (*Patch* v. *Anderson,* 66 Cal.App.2d 63, 66 [151 P.2d 644].)

If a purported agreement is too indefinite to ascertain the intention of the parties, it cannot be enforced; not for want of an equitable remedy but because of the absence of clear, unmistakable proof of all the essential terms of a contract. (*Buckmaster* v. *Bertram,* 186 Cal. 673, 676 [200 P. 610]; *Martin* v. *Bank of San Jose,* 98 Cal.App. 390, 398 [277 P. 197]; *Harris* v. *Larter,* 36 Cal.App.2d 587, 593 [97 P.2d 1035]; Rest., Contracts, § 370.) . Definiteness of an agreement is the *sine qua non* of its enforcibility. While it may be uncertain in some particulars and its nonperformance by the obligor may provide the basis of a recovery of damages for its breach, yet in order to justify a judgment of specific performance, its uncertainty must have been removed. The statement of its purposes in all particulars must be clear, definite and precise. (Civ. Code, § 3390, subd. 6; *Pascoe* v. *Morrrison,* 219 Cal. 54, 57 [25 P.2d 9]; *Klein* v. *Markarian,* 175 Cal. 37, 40 [165 P. 3]; *Chandler* v. *Hollingsworth,* 96 Cal.App. 472, 475 [274 P. 581]; *Durst* v. *Jolly,* 35 Cal.App. 184, 190 [169 P. 449].)

Inasmuch as the findings are supported by substantial evidence they will not be upset on appeal. In fact, they must be given the benefit of every reasonable inference to be drawn from the evidence favorable to the judgment. (*California Employment Co.* v. *Betthesda Foundation,* 54 Cal.App.2d 348, 351 [128 P.2d 874]; *Herbert's Laurel-Ventura, Inc.* v. *Laurel Ventura Holding Corp.,* 58 Cal.App.2d 684, 690 [138 P.2d 43].) In view of the foregoing, it is unnecessary to consider other points raised by appellants.

Judgment affirmed.

McComb, J., and Wilson, J., concurred.