[Civ. No. 18209.   First Dist., Div. One.   Apr. 21, 1959.]

COUNTY OF SAN MATEO, Appellant, v. CONSOLIDATED FARMS, INC. (a Corporation) et al., Respondents.

736

Keith C. Sorenson, District Attorney, and Howard E. Gawthrop, Deputy District Attorney, for Appellant.

Wagstaffe, Daba & Hulse for Respondents.

BRAY, P. J.—Plaintiff appeals from a judgment in favor of defendants.

## QUESTION PRESENTED

Were defendants operating a commercial hog ranch within the meaning of an ordinance defining such ranch?

## FACTS

San Mateo County Ordinance Number 568 (codified in San Mateo County Ordinance Code, § 5560.1, div. V, pt. Two, ch. 7) provides: "Commercial hog ranch shall mean any premises where more than forty (40) head of swine are maintained, raised, fed or fattened, or where two or more head of swine are maintained, raised, fed or fattened upon commercial garbage."

Consolidated Farms, a California corporation, owns a 2,500-

acre ranch in San Gregorio, San Mateo County. Farms is in the farming and stock raising business, including the raising of hogs, in California and Nevada. In December, 1954, Farms had a 100-acre portion of the San Gregorio ranch surveyed, which was later divided into one-acre plots. Farms paid for the surveying and fencing of the parcels and for supplying waterlines, roads and feeding troughs.

On June 15, 1955, Farms leased for 15 years the 100-acre portion to the individual named defendants as tenants in common. With one exception, the lessees were the stockholders in Farms and their wives. By a judgment of partition of the lease the leased property was divided among the lessees into 100 one-acre plots. In June or July, the lessees entered into an oral agreement with David Arata, president of Farms, a stockholder and named defendant, whereby Arata would act as trustee for each lessee in conducting hog raising on the parcels.

The individual lessees advanced no cash for purchase of hogs or feed from Farms. Arata kept separate accounts for each lessee showing expenses and credits for hogs sold. An accounting was made each year. Between July, 1955, and December, 1955, the maximum number of hogs on the 100 acres was 1,554 at any one time; from then to the time of filing of the complaint, 137; and in June, 1957, the number was 150. No more than 40 hogs have ever been on any one parcel, no commercial garbage was used as feed and no commercial hog ranch license was obtained by the lessees or by Farms.

The trial court found that defendants were not conducting a commercial hog ranch and that each of said parcels is a separate premise under the ordinance.

## The Ordinance Is Violated

Under the well known rule this court is bound by the findings of the trial court if there is any substantial conflict in the evidence or in the reasonable inferences to be drawn therefrom. (See *Dickey* v. *Pattison*, 92 Cal.App.2d 659 [207 P.2d 1081]; *McIntyre* v. *Doe & Roe*, 125 Cal.App.2d 285 [270 P.2d 21].) There is no conflict in the evidence nor is there more than one reasonable inference to be drawn therefrom, and that inference is contrary to the one drawn by the court. The evidence clearly shows that the operation conducted by defendants is in essence one commercial hog ranch operation under a rather ingenious scheme devised to attempt to get away from the effect of the ordinance.

■ This is an equitable proceeding. Equity regards substance rather than form. Acts of individuals will be recognized as being those of corporations to prevent fraud, protect the rights of third persons and accomplish justice. (*In re Clear Lake Beach Co.*, 12 F.Supp. 250; see also *Lencioni* v. *Fidelity Trust & Sav. Bank* (1928), 95 Cal.App. 490, 497 [273 P. 103, 274 P. 75].)

■ In addition to the facts hereinbefore stated, there are the additional ones bearing on the true relations of the defendants and the operations. Farms' stockholders are lessees in proportion to their interests in the corporation. Each stockholder received six of the 100 parcels. In the case of married stockholders, the six parcels were divided equally between husband and wife. One nonstockholder received 12 parcels, the equivalent of what two stockholders, the only ones who received none of the parcels, would have received. In substance, the corporation managed all the operations. Its president, Arata, was trustee under an oral agreement. No specific compensation for him or the corporation was set and none paid by the lessees. The latter furnished no capital. Arata bought the hogs on credit from Farms. He used his discretion in placing the hogs on the parcels. The individual lessees did not known how many hogs were on their respective parcels.

The ordinance defines a commercial hog ranch as "any premises where more than forty (40) head of swine are maintained . . ." Defendants contend that "premises" as applied here means the one-acre parcels. "Premises" has various legal meanings depending on the context and the situation. (*Gibbons* v. *Brandt* (1947), 170 F.2d 385, 387.) Thus, it is necessary to examine the legislative intent. "Premises" need not be separately fenced or separately leased property. An office building leased to various tenants could be considered a single premise. In *Porter* v. *Tureen* (1946), 68 F.Supp. 214, "premises" within the meaning of rent regulations was held to include two buildings rented by the defendant. In the cases defining "premises" including those cited by defendants, it appears that the legal concept of the word is a very fluid one depending upon the situation and the purpose of the statutory enactment using the word. (See *Ballsun* v. *Star Petroleum Co.* (1930), 105 Cal.App. 679 [288 P. 437], where the court reversed the determination of the trial court that "premises" in a lease meant only land and held that it meant either land or buildings or both.) ■ In interpreting particular words, the entire substance of the statute must be examined to deter-

mine the scope and purpose of the provision of which the words form a part. (*Wallace* v. *Payne* (1925), 197 Cal. 539, 544 [241 P. 879].)

Applying these rules to the ordinance, it is clear that "premises" does not have a rigid meaning, and that the board of supervisors in adopting it intended that commercial hog ranches be not located in the area where Farms has its ranch, and that the maintenance of a certain number of hogs in proximity be not allowed. The supervisors could not have anticipated every method by which a commercial hog ranch would be operated, nor that a corporation intending to operate a commercial hog ranch would divide its land among its stockholders and then operate with a common manager. Under this arrangement 4,000 hogs (40 to each one acre) could be raised and sold and yet defendants would claim that there is no violation because while operated practically as one business, it is by a group carrying on hog raising over 100 parcels. If this scheme does not violate the ordinance, then it would be possible to divide one acre into 17 parts upon the whole of which 400 hogs could be maintained by a "trustee" without violating the ordinance. Here we have a definite area. Farms leased 100 acres for 15 years to be devoted to hog raising. The "premises" are the leased 100 acres despite the partition. The partition merely gave a physical location to each lessee; it did not alter the nature, area or intended use of the area. The net overall activity must be said to constitute a commercial hog ranch on "premises" prohibited by the ordinance.

The only reasonable interpretation of the evidence is (a) that the hog raising activities were one operation and (b) were conducted on one "premise."

The judgment is reversed.

Wood (Fred B.), J., and Hanson, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.