[Civ. No. 24424.   Second Dist., Div. Three.   Nov. 10, 1960.]

CITY OF NORWALK, Respondent, v. AUCTION CITY, INC. (a Corporation), Appellant.

*Assigned by Chairman of Judicial Council.

Jerome Weber and Benjamin Held for Appellant.

Ralph J. Geffen, City Attorney, for Respondent.

FORD, J.—The defendant appeals from a judgment by which it was "permanently enjoined from the continuation of a race track" on certain property. The land was in a zone designated as M-2 under the zoning ordinance of the city.

Only two portions of section 501 of the ordinance are set forth in the complaint and admitted by the answer. One portion is:

"USES LISTED.

"A person shall not use any premises in Zones Q, M-2, M-3, or M-4 for any of the uses listed in this section unless a valid unrevoked special use permit for such use is required by and is in effect in accordance with the provisions of Section 503 of this Ordinance."

The other portion, being subdivision 24 of subsection D of section 501, is:

"Race track of any kind except a race track used exclusively for contests of speed, skill, or endurance between human beings only."

Since no special use permit was obtained by the defendant,

the sole question presented on this appeal is whether the particular activity involved in this case constitutes use of the property as a race track.[1] There is no substantial factual dispute.

Before Norwalk became an incorporated city, the zoning ordinance of the county of Los Angeles governed the use of the property. Immediately upon such incorporation in August 1957, the language of such county ordinance was embodied in the new zoning ordinance of the city. Prior to August 2, 1946, the prohibition in the county ordinance was expressed as being only applicable to race tracks for motor vehicles and motorcycles. When the county ordinance was amended on that date so as to change the language of the prohibition to that which was later adopted by the city in subdivision 24 of subsection D of section 501 of the Norwalk ordinance, it was contemplated that a race track for the racing of horses would be erected in the county at Puente. At the time of such amendment, there was no quarter-midget vehicle racing in the county of Los Angeles.

The activity in question, which had started some time before August of 1957, is conducted on the property by a nonprofit corporation, National Junior Midget Racing Association, under a sublease with the defendant, Auction City, Inc., for a consideration of one dollar per year. The membership of the operating group is composed of families with children. Such activity consists of the driving by children of midget automobiles, propelled by two-horsepower "lawnmower" motors, around a track one twentieth of a mile in length for a number of laps in competition for a trophy or a ribbon which is awarded to a contestant finishing in first, second or third place. While the record is not definite as to the ages of the drivers, one witness testified that his son, then nine years old, had driven for over three years.[2] The track was built by "the fathers and sons and whoever could get out there to help." Spectators do not pay to watch the events but are free to make monetary contributions to the association.

With respect to the actual conduct of an event, generally the competitor who is the slowest in a qualifying heat is given

---

[1] No issue as to a nonconforming use is raised on this appeal.

[2] In its answer, the defendant alleges that the "National Junior Midget Racing Association . . . provides children between the ages of 4 and 12 with recreational facilities for the use and operation of what is known as Quarter Midget Racing cars which are scale models of real racing cars but which are powered by motors which seldom exceed 2 H.P."

the pole position in the final competition. In most instances, such position enables that driver to win. But there is not as much regularity with respect to those who achieve second or third place. The children are enabled to test their skill, mechanical knowledge and sportsmanship. A witness for the appellant testified that ''[w]e try to simulate racing as much as possible to keep the children interested in the project.''

The question of the construction of the ordinance is one of law. (See *Reid & Sibell* v. *Gilmore & Edwards Co.*, 134 Cal.App.2d 60, 72 [285 P.2d 364]; *County of Monterey* v. *Madolora*, 171 Cal.App.2d 840, 841 [341 P.2d 333].) ''In construing a zoning ordinance the same rules are normally applicable as in construing statutes in general (*City of Yuba City* v. *Cherniavsky*, 117 Cal.App. 568, 571 [4 P.2d 299]) and accordingly a zoning ordinance must be construed reasonably considering the objects sought to be attained and the general structure of the ordinance as a whole (Yokley Zoning Law and Practice, p. 318; *Petros* v. *Superintendent & Inspector of Buildings*, 306 Mass. 368 [28 N.E.2d 233, 235]).'' (*Markey* v. *Danville Warehouse & Lbr., Inc.*, 119 Cal.App.2d 1, at p. 5 [259 P.2d 19].) In the present case, the complete zoning ordinance was not offered in evidence. We are precluded from taking judicial notice of the parts thereof which are not in the record before us. (*Simpson* v. *City of Los Angeles*, 40 Cal.2d 271, 277 [253 P.2d 464]; *Higbee* v. *LaSalle*, 145 Cal. App.2d 737, 739 [303 P.2d 65]; *Stamper* v. *City of Los Angeles*, 80 Cal.App.2d 242, 245 [181 P.2d 687].) Consequently, in the determination of whether the questioned use of the property falls within the prohibition as to the operation of a race track, we are not offered the aid which a study of the complete zoning ordinance might provide. (*Cf. County of San Mateo* v. *Consolidated Farms, Inc.*, 169 Cal.App.2d 735, 738-739 [337 P.2d 840]; *City of Los Angeles* v. *Barrett*, 153 Cal.App.2d 776, 782 [315 P.2d 503]; *Regan* v. *Council of City of San Mateo*, 42 Cal.App.2d 801, 806 [110 P.2d 95]; see 101 C.J.S., Zoning, § 130.) It is true that the record indicates that breweries, ball parks, and ferris wheels are permitted in the M-2 zone, but such a fragmentary glimpse of the ordinance does not furnish substantial assistance in the solution of the problem presented.

We have not overlooked the history and background of the ordinance in seeking aid in the determination of the meaning and purpose of the portion thereof we are called upon to construe. (See *People* v. *One 1952 Mercury 2-Door Sedan*, 176

Cal.App.2d 220, 222 [1 Cal.Rptr. 245].)    ▮    But even the language used before the amendment of the county ordinance in 1946 appears to cover the use here in question since the usual understanding of the meaning of "motor vehicle" embraces a vehicle which is self-propelled and by which a person may be carried. (See *Lambert* v. *Southern Counties Gas Co.,* 52 Cal.2d 347, 351 [340 P.2d 608] ; *Behling* v. *County of Los Angeles,* 139 Cal.App.2d 684, 686-687 [294 P.2d 534].)

▮    The rule which must guide the court in resolving the question presented is well-stated by an authority on the law of zoning (1 Yokley, Zoning Law and Practice (2d ed.), § 184, p. 466] ) : "In the interpretation of a zoning ordinance, words in common use must be given their plain and natural meaning in the absence of any showing that in the enactment of such ordinance words and expressions contained therein were used in any other than their usual and ordinary sense. In other words, the language of the zoning ordinance must be construed according to its natural import in common and approved usage." (See also *Pepper* v. *Board of Directors,* 162 Cal.App.2d 1, 4-5 [327 P.2d 928].)    ▮    In the present case, it is true that the midget racing activity does not have all of the features which are inherent in commercial automobile or motorcycle racing and which are of importance in matters of zoning legislation. But it does involve the use of a type of vehicle which is propelled by a motor and does have a number of the other features of such racing, although on a smaller scale. It is not a matter of a contest between "human beings only"; the competition is carried on by the operation of self-propelled vehicles. Essentially, the activity is racing because the children compete with each other in contests of speed. Such activity, in the absence of the requisite permit, falls within the scope of the prohibited uses of the property and we are not free, under the guise of construction, to insert qualifying provisions in the clear language of the ordinance. (See *Kirkwood* v. *Bank of America,* 43 Cal.2d 333, 341 [273 P.2d 532] ; *People* v. *Clark,* 106 Cal.App.2d 271, 277 [235 P.2d 56].) Nor can we usurp the legislative function and read into the ordinance an exception for the type of activity here involved because it may be thought that it has less objectionable aspects or is less annoying than other kinds of racing or because it may be believed that it serves an educational or recreational purpose insofar as children are concerned.

▮    In the absence of a manifestly unreasonable classification, the wisdom of the ordinance is not a matter for the court.

(*Minney* v. *City of Azusa,* 164 Cal.App.2d 12, 25 [330 P.2d 255].)

Since the city was entitled to relief by way of the injunction granted (see *City of San Mateo* v. *Hardy,* 64 Cal.App.2d 794, 797 [149 P.2d 307]), the judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.