[Civ. No. 24940. Second Dist., Div. Three. June 28, 1961.]

SALVADOR BECERRA, Respondent, v. LEO HOCHBERG, Appellant.

Huston T. Carlyle and Frank Renzi, Jr., for Appellant.

Milton Fenton for Respondent.

BISHOP, J. pro tem.*—The plaintiff leased to the defendant for a five year term some property on Brooklyn Avenue in Los Angeles "to be used as chicken and egg and live poultry market and for no other purpose." The defendant paid the first month's rent, failed to pay for a number of months, then resumed paying and had continued to make the monthly payments up to the trial. The judgment, for the rent not paid for a spell, is attacked on the ground that the lease was for a use made illegal by the city's zoning ordinance. The illegality of the lease was not made to appear, and we are affirming the judgment.

Although there were two defendants, the judgment ran against only one; only he is appealing. We shall use the singular in referring to plaintiff's adversaries. Defendant had lived in the neighborhood for a long time before he leased the plaintiff's premises, and presumably was aware of the fact that there had been a live poultry market next door just before the plaintiff purchased his place. The plaintiff gave him the keys to his place some two or three months before the lease was signed, in order to enable him to get a bid on work that he contemplated having done. Before the defendant signed up he had obtained a permit from the city to make his planned alterations, the city's department of building and safety having advised the city clerk that "The L.A.M.C. (does) (does not) permit a Live Poultry Market at: 2104 Brooklyn Ave."

With the permit in hand and the lease signed, the defendant had begun rather extensive alterations when he received,

---

*Assigned by Chairman of Judicial Council.

from the department of building and safety, a notice to stop all work, because "This building cannot be used as a poultry store & slaughtering. This permit was issued in error. . . ." It was, we surmise, the plans for the "eviscerating room" that brought the project into disrepute. In any event, the defendant stopped the work; stopped paying rent; applied for and was denied a variance; appealed, and obtained a variance; then resumed paying rent and continued so doing up to the time of trial.

The position that the defendant takes on this appeal is foreshadowed in his answer when he averred: "That the real property noted in the lease herein sued upon was at the time of the making of the lease erroneously supposed by both parties thereto to be zoned in such a way as to allow a live chicken and egg poultry market with incidental slaughtering." He went on to allege that this was a mutual mistake; that the zoning did not allow that type of market. If defendant's theory was correct, and the lease was the result of a mutual mistake, the defendant would have had a good ground to rescind this contract. This, of course, he never did, but continued to retain possession of the property, without paying the rent, until he straightened things out so that he could slaughter his chickens on the leased property. But the trial court found that the allegations of the answer were not true, and there was no evidence that the plaintiff ever knew that the lease, providing that the premises were to be used "as chicken and egg and live poultry market" was intended to cover "incidental slaughtering." The defendant testified, after some prompting by his counsel, that the live poultry market business includes slaughtering and dressing the chicken that was bought alive by the customer, but this facet of the business, if it be a fact, was not brought home to the plaintiff.

Basically, defendant's position on this appeal is that the object of the lease was that the premises were to be used for a purpose prohibited by the zoning ordinance of the city of Los Angeles. Were this true, the courts should not enforce the lease. (*Dunn* v. *Stegemann* (1909), 10 Cal.App. 38 [101 P. 25].) But it was not shown to be true. Neither the superior court nor this court will take judicial notice of a municipal ordinance (*City of Norwalk* v. *Auction City, Inc.* (1960) 186 Cal.App.2d 287, 290-291 [8 Cal.Rptr. 781, 783]; *Higbee* v. *La Salle* (1956), 145 Cal.App.2d 737, 739 [303 P.2d 65, 67]). Nor was the trial court required by the acts

of the various city departments—first granting a permit, then stopping the work, and lastly approving a variance "to permit the establishment and operation of a live poultry market, including slaughtering"—to conclude that without the variance the maintenance of a "live poultry market" would be illegal.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.