33   111
100   660

## N. K. MASTEN v. FREDERICK GRIFFING.

NONSUIT.—A nonsuit is proper if the plaintiff's evidence does not tend to prove the cause of action set up in the complaint.

IDEM.—If the complaint states the cause of action to be an agreement of the defendant to pay the plaintiff a certain sum if the plaintiff procures a purchaser

who will agree to buy defendant's land at a price named, evidence that the plaintiff found a purchaser who agreed to buy if defendant would lease the land and pay a stipulated rent therefor for three years ensuing the conveyance, does not tend to make out the cause of action stated in the complaint, and the defendant is entitled to a nonsuit.

LEGAL EFFECT OF EVIDENCE.—In passing on the legal effect of the plaintiff's evidence, the examinations in chief are not to be detached from the cross examinations.

FAILURE TO PROVE CAUSE OF ACTION STATED.—If the alleged cause of action is for services for having found a purchaser who agreed to buy defendant's land at a certain price, evidence that plaintiff found a person who would agree to buy if defendant would first take a lease for three years and give security for the rent, and that defendant did not take the lease, but merely agreed to do so and give security, and that the purchaser did not accept of such agreement, does not show that plaintiff found a purchaser who agreed to buy at any price.

CONTRACT IN DUPLICATE.—If a contract is drawn up in duplicate and signed by one party, and the other takes both copies and returns them the next day without signing either, and declines to sign unless a new provision is inserted, the contract does not bind either party.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

The plaintiff appealed.

The other facts are stated in the opinion of the Court.

*Grey & Brandon,* for Appellant.

Will it be contended, that because the transfer of the property did not take place, on account of Griffing failing to carry out one of the terms of the contract, that, therefore, we have no claim?

The cases of *Middleton* v. *Findla,* 25 Cal. 74, and *Doty* v. *Miller,* 43 Barb. 529, we think, fully settle the point that a broker is entitled to his commissions when he has placed the contracting parties in such a position that each can compel the performance, by the other, of the contract made; and this we conceive to be the rule consonant with reason and equity. That result was effected in this case. Livingston should have compelled Griffing to sell him the property, and give security for the rent, or have obtained damages for the failure to do so; and on the other hand, Griffing, by tender-

ing satisfactory security and a deed of the property, could have recovered from Livingston the purchase money mentioned.

The contract of sale was not made *conditionally* upon Griffing being able to give satisfactory security, but the giving of such security was one of the *terms* of the contract, and could have been enforced by Livingston. The mere fact that Livingston chose to forego and not insist upon his claim, or that Griffing was unable to carry out that term of his contract, can in no way prejudice the rights of the broker. (*Middleton* v. *Findla*, 25 Cal. 74; *Doty* v. *Miller*, 43 Barb. 529.)

*B. S. Brooks*, for Respondent.

The true rule as to a nonsuit was laid down by Mr. Chief Justice Savage, in the case of *Stuart* v. *Simpson*, 1 Wend. 376, which is this: " If the evidence would not authorize a jury to find a verdict for the plaintiff, or the Court would set it aside, if so found, as contrary to the evidence in such case, it is the duty of the Court to nonsuit the plaintiff."

It is not sufficient that there is *some* evidence presented by the plaintiff upon which a jury *could* find a verdict. It is a very common thing for a witness upon his direct examination to state an ultimate fact which, if standing unexplained, would authorize the jury to find a verdict for the plaintiff; but when the witness comes to be cross examined, and details all the facts and circumstances, it may appear that the ultimate fact stated by the witness in his direct examination was an erroneous legal conclusion on his part, made quite innocently.

The contract sued on was an employment to sell the property for at least sixty-two thousand dollars. Did plaintiff's assignor find such a purchaser? Griffing was always ready and willing, nay, anxious, to make a deed to Mr. Livingston upon receiving sixty-five thousand dollars. Mr. Livingston

15

was not willing; he wanted something more. Livingston never placed himself in such a position that he could be compelled to perform. Griffing could not, by tendering satisfactory security and a deed of the property, have recovered from Livingston the purchase money mentioned, because by refusing to sign a contract to that effect, he distinctly refused to enter into any such agreement. He insisted upon having security satisfactory to himself agreed upon beforehand.

*Grey & Brandon,* in Reply.

Could the contract even be construed as a proposal on the part of Griffing, it became a contract on the parol acceptance of Livingston. " A written proposal, signed by the party to be charged, and accepted by parol by the party to whom it is made, is a sufficient memorandum to satisfy the Statute of Frauds. (*Reuss* v. *Picksley,* Eng. Law Rep. 1 Ex. 342, cited in American Law Review for Jan. 1867, p. 299.)

By the Court, SHAFTER, J. :

This is an action to recover the sum of three thousand dollars for services alleged to have been performed for the defendant by one Henry Leffingwell, as broker. The plaintiff claims as assignee of Leffingwell. The plaintiff was nonsuited at the trial, and the only question presented is whether the evidence put in by the plaintiff in his opening tended to prove the cause of action set up in the complaint. (*Cravens* v. *Dewey,* 13 Cal. 40.) We are of the opinion that the case was not supported by the evidence upon which the plaintiff rested, and that the nonsuit was therefore properly directed.

First—The complaint charged that the defendant promised Leffingwell that if he " would procure a purchaser for certain premises who would agree to purchase the same, that he, the said defendant, would pay the said Leffingwell, as his com-

pensation for procuring such purchaser, such sum of money exceeding the sum of sixty-two thousand dollars as the purchaser should agree to pay for said property." It was further alleged that Leffingwell did thereafter " procure a purchaser for said property, who did agree to purchase the same at and for the sum of sixty-five thousand dollars, gold coin of the United States; and the said defendant did then and there contract and agree in writing, under his hand, to sell and convey to the purchaser so procured by the said Leffingwell as aforesaid the said premises before mentioned."

According to these allegations Leffingwell was to be entitled to commissions in the event of his finding a person who " would agree " to purchase the land at a sum exceeding sixty-two thousand dollars; the defendant being required to do nothing on his part except to sell, or to agree to sell and convey the land. The contract on which the commissions were cast was, in short, to be land for money, and money for land. Admitting, for the present, that the evidence of the plaintiff tended to prove that the agreement between the plaintiff and Leffingwell was set forth correctly in the complaint, still there was no evidence tending to prove that Leffingwell ever found a party who either agreed, or would agree, to pay anything in excess of sixty-two thousand dollars, or any sum whatever, for the land alone, as alleged. The evidence was, at the most, that one Livingston, by Leffingwell's procurement, offered to pay, or to agree to pay, sixty-five thousand dollars for the land, in the event that the defendant would lease the property of him, Livingston, for three years ensuing the conveyance and delivery of possession, for the sum of twelve hundred dollars per month, payable monthly, with satisfactory guaranty for the payment of the rent; and to pay all taxes that might be levied upon the property during the continuance of the term. However meritorious the services of Leffingwell may have been in procuring the purchaser on these terms, it is sufficient to say, that the terms were radically different from those upon which

the liability of the defendant to pay commissions was made to hinge, according to the complaint.

Second—But the plaintiff's evidence not only came short of the case made in the complaint, but it also failed to establish that Leffingwell found a purchaser who agreed to buy the property at sixty-five thousand dollars, or any other sum. And here it is to be·remarked that in passing upon the legal effect of the plaintiff's evidence, the examination in chief is not to be detached from the cross examination—certainly not in so far as the latter may be regarded as explanatory of general statements made by the witnesses, while in the hands of the party who called them, involving conclusions of law on their part.   Observing this precaution, we consider that the plaintiff's testimony went to show that the plaintiff was employed by Leffingwell to look out for a purchaser, and that the plaintiff had an interview with Livingston " who agreed to take the land at sixty-five thousand dollars." Having settled the terms of sale and purchase by parol, Masten proceeded to reduce the contract to writing so as to make it binding upon Griffing under the Statute of Frauds.   The contract was drawn in two parts, one to be signed by the defendant, and the other by Livingston.   One part was actually signed by Griffing, and was handed by Masten to Livingston, together ·with the counterpart, for Livingston's signature.   Livingston kept the papers over night in his safe, and, without having signed either the original or counterpart, returned both to Masten the next day, with the declaration that " his lawyer had told him not to give a contract till he got a lease."   This declaration, accompanied as it was, by a return of the papers unsigned by Livingston, amounted to a refusal on his part to buy the land on the terms mentioned in the paper to which the defendant, by his signature, had committed himself.   That memorandum did not contemplate that Griffing should take a lease from the " purchaser " of the property in advance of a contract to purchase; that is, before any person had taken on the character of purchaser. By the memorandum Griffing simply agreed to take a lease

for three years of Livingston, and to give him satisfactory security for the payment of the rent, as a part of the consideration of an *in præsenti* agreement on Livingston's part to purchase. But Livingston, under the advice of counsel, refused to agree to buy in consideration of an agreement on Griffing's part to lease and to secure. Over and beyond such agreement, Livingston would not stipulate to buy, except on terms that Griffing should first actually take a lease and furnish satisfactory security for the payment of the rent. An agreement to take a lease of property and to furnish satisfactory security for the payment of rent is one thing, and the actual taking of a lease accompanied with an actual furnishing of security for the payment of rent is another and entirely distinct thing. It is clear that the minds of parties never met. The note in writing, signed by the defendant, would have bound him if Livingston had accepted its terms as they were put; but instead of accepting he declined them, and insisted upon a new provision as a *sine qua non*, to which the defendant never assented in writing nor otherwise.

Judgment affirmed.

Mr. Justice RHODES did not express an opinion.