[Civ. No. 2813. First Appellate District, Division One.—June 30, 1919.]

MARX & RAWOLLE (a Corporation), Appellant, v. THE STANDARD SOAP COMPANY (a Corporation), Respondent.

[1] CONTRACTS—ACTION FOR DAMAGES FOR REPUDIATION—EVIDENCE—CONTRACT NOT CONSUMMATED.—In this action for damages for the alleged repudiation of a contract for the sale of twelve carloads of crude glycerine, the letters and telegrams passing between the defendant and certain middlemen acting as brokers for the purpose of purchasing the product in question for the use and benefit of the plaintiff did not amount to a completed agreement for the sale of said product, and the defendant was within its rights in withdrawing from the negotiation before the parties arrived at and consummated a final and binding contract in the premises.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge. Affirmed.

The facts are stated in the opinion of the court.

Adams & Adams and John D. Murphey for Appellant.

Winfield Dorn and J. R. Pringle for Respondent.

RICHARDS, J.—This is an appeal from a judgment in favor of the defendant in an action instituted by the plaintiff to recover damages from the defendant for the alleged repudiation of a contract for the sale by the defendant to the plaintiff of twelve carloads of crude glycerine. The

contract upon which plaintiff relies for a recovery was claimed by it to have been created through an interchange of telegrams and letters passing between the defendant and certain middlemen acting as brokers for the purpose of purchasing the product in question for the use and benefit of the plaintiff. These middlemen were the Zimmerman, Alderson, Carr Commission Company, having offices in Chicago and New York, the plaintiff being a business concern located in the latter city. The defense relied upon by the respondent on the trial and upon this appeal is that the letters and telegrams referred to did not amount to a completed written agreement for the sale of said product, and that the defendant withdrew from the negotiation before the parties had arrived at and consummated a final and binding contract in the premises. The trial court, upon the conclusion of all of the evidence presented on both sides of the case, granted the defendant's motion for a nonsuit, which had the effect of withdrawing the case from the jury, and which was followed by the judgment in the defendant's favor from which this appeal has been taken.

The evidence is in the main undisputed. The negotiations out of which the action arose were initiated by a letter sent on September 2, 1915, from the Chicago office of the above-named brokers to the defendant at its place of business in Berkeley, California, explaining the state of the glycerine market, and suggesting that the firm of brokers could sell some of the defendant's glycerine product at an indicated price. The defendant responded on September 17, 1915, with a telegram to the brokers to the effect that it would sell about twelve cars of crude glycerine for a price slightly above that indicated in the brokers' letter. Upon receipt of this message the brokers' Chicago office communicated its import by telegram to their New York office, which submitted the substance of the defendant's message to the plaintiff, who on the same day authorized the latter to instruct the Chicago office that the plaintiff would take twelve cars of glycerine at the indicated price shipside San Francisco. Certain details as to the disposition of the drums which were to contain the glycerine during shipment were included in this message, and upon its receipt the Chicago office at once sent to the defendant a telegram embodying the terms, to which the defendant responded on September 18th, by telegram in the following words:

"Telegram received. O. K. If our usual terms 90 per cent against documents satisfactory. Our option as to drums returnable or seven dollars to keep 12 drums one year or over."

The Chicago office immediately advised the New York office of the terms of this telegram, which replied in a brief dispatch, reading:

"Calder confirms Standard crude terms specified excepting sellers must declare their intention regarding drums at once and not retain the option through delivery."

This message was amplified by the manager of the Chicago office into a longer telegram to the defendant, which embraced both the latter's offer and the buyer's qualified acceptance, and requesting a speedy reply. This message was sent on September 18th and was followed by another brief dispatch on the following day urging a quick reply, to which two messages the defendant, on September 20th, responded with a dispatch in the following words:

"Will accept contract as outlined and sell drums at seven dollars. Give immediate shipping instructions as we will have a car to ship in a few days."

Upon receipt of this message by the brokers' Chicago office it at once telegraphed to the New York office:

"Standard Soap confirms sale. Marx to pay seven dollars for drums also giving shipping instructions first car."

It is the contention of the appellant that the letters and telegrams above quoted or referred to constituted a completed contract in writing between the parties, upon the respondent's subsequent repudiation of which the present right of action arose.

There would be a certain degree of plausibility in this contention were it not for the fact, as disclosed by other evidence in the case, that the minds of the parties had not yet fully met upon one of the essential elements of the agreement to be consummated between them, and were it not also for the fact, as shown by the subsequent conduct of the parties, that a more formal writing was to be executed embracing their contract. One of the essential conditions of the defendant's entering into a contract for the sale of its product was that embraced in the dispatch of September 18th and contained in the clause "O. K. if our usual terms 90 per cent against documents satisfactory."

By this phrase the defendant wished to be understood as reserving the right to draw upon the buyer at sight for ninety per cent of the purchase price as soon as the documents which evidenced shipment were forwarded. But it appears that this was not the buyer's understanding of the meaning of this clause in the seller's telegram, since it was understood to mean that the seller might draw upon the buyer at ten days' sight for ninety per cent of the invoice price of each shipment, the difference between these two constructions of this clause in the defendant's telegram being equivalent to a discount of one per cent in the plaintiff's favor. Aside, however, from what the evidence discloses as to this divergent interpretation of the meaning of the phrase in question, there was another particular in respect to which apparently the minds of the parties had not met upon September 20, 1915, the date which the appellant fixes as that of the ripened agreement between the parties. This has reference to the quality of the drums which were to contain the glycerine and for which the buyer of the product was to pay seven dollars each. On September 22, 1915, the plaintiff informed the brokers' New York office that "In agreeing to accept drums at seven dollars apiece Marx & Rawolle are to receive A 1 stock." This information, not embraced in any former correspondence, was conveyed by the New York office to the Chicago office of the brokers, and was by the latter forwarded by letter to the defendant on the date of its receipt by them. In this letter it was for the first time disclosed to the defendant the name of the prospective buyer of its product, although it was perfectly evident from the earlier messages which had passed between the brokers and this defendant that the former were merely acting in the capacity of middlemen. Two days after sending the letter above referred to in which the quality of the drums was for the first time mentioned, the brokers, through their Chicago office, prepared and forwarded to the defendant a formal contract covering the transaction. This document was drawn apparently upon a form customarily used in similar transactions, setting forth with considerable circumstance and detail the precise terms of the agreement to be entered into between the principals to it. Among other details it embraced a specific statement of the two matters above referred to respecting which the

minds of the parties had not yet fully met. As to the first of these it expressed with unmistakable exactitude the understanding of the plaintiff herein as to the terms of payment of defendant's product, an understanding which was communicated by the plaintiff to the brokers before the formal contract was drawn and which, by referencce to that document, will be seen to differ materially from the defendant's idea as to the meaning of the brief verbiage of its earlier telegram. As to the quality of the drums it is also quite precise in its specification that the glycerine was "to be shipped in No. 1-a grade drums." As to this latter detail the defendant does not seem to have regarded it as material, but as to the former it expressed its dissatisfaction with the terms of the formal contract in a letter sent to the brokers immediately upon receipt of the proposed contract.

[1] It thus appears that neither of the parties to the transaction understood at the time that the communications which had passed through their intermediary up to and including September 20, 1915, constituted the final and binding contract between them. This being so, and the final form of contract sent to the defendant being found to vary materially from the terms apparently arrived at in their previous informal negotiations, the defendant was entirely within its rights, both in refusing to execute the same and in withdrawing from the transaction on October 6, 1915.

This being the conclusion of the trial court, it was within its rights in granting a nonsuit at the close of all of the evidence in the case.

Judgment affirmed.

Kerrigan, J., and Waste, P. J., concurred.