[Civ. No. 3890.   Fourth Dist.   Dec. 15, 1949.]

KENNETH J. SACKETT, Appellant, v. E. G. STARR, Respondent.

George H. Tobias, Lloyd S. Nix and Robert F. Tyler for Appellant.

Mize, Kroese, Larsh & Mize for Respondent.

GRIFFIN, Acting P. J.—The amended complaint upon which the cause was tried sets forth two counts. In the first, plaintiff seeks specific performance of an agreement, based upon certain preliminary negotiations and written correspondence, for the purchase and sale of certain real property located in Riverside County. In the second count he seeks specific performance in the purchase and sale of the same property based upon the doctrine of equitable estoppel. Defendant answered the complaint, denied generally its allegations, set up an affirmative defense, and by way of cross-complaint asked that his title be quieted. After trial, the court refused specific performance and entered judgment for defendant on his cross-complaint. Plaintiff appealed.

The La Cienega, the property here involved, is a part of an old Spanish land grant. It is contiguous to Los Pinos and El Cariso tracts located in the mountains about 15 miles above Lake Elsinore. These three parcels have been owned by de-

fendant since 1930. Plaintiff and one Stewart, his father-in-law, had, since 1926, operated a partnership for the purpose of raising cattle in the same general area. They owned two parcels of land, one known as the "Mountain Ranch" and the other as the "Valley Ranch." The Valley Ranch was used in conjunction with the Mountain Ranch in their livestock operations. Plaintiff and his partner became interested in the acquisition of the three parcels belonging to defendant. Through one Richards, a real estate broker, plaintiff agreed to purchase from defendant these three ranches for a consideration of $25,000, payable $10,000 by deed of trust and the balance cash, $500 of which was paid on the opening of an escrow which called for an additional $1,500 by April 14, 1946, and $13,000 on demand of escrow. This escrow agreement was dated March 14, 1946, and was signed by both plaintiff and defendant. No money, other than the $500, was deposited in this escrow, and on April 24, 1946, the seller terminated it, apparently for the reason that plaintiff failed to deposit the amount of money required within the time specified. In conjunction with this termination defendant, on April 25, wrote the title company a letter which reads in part as follows: ". . . Sackett has not complied with his obligations under the terms of the escrow instructions dated March 14, 1946. . . . This letter will confirm my instructions of April 24, 1946, that said escrow is terminated . . . You are to return to me all documents deposited by me in said escrow. All sums deposited by . . . Sackett are to be applied first to the payment of your charges and the remainder remitted to me."

Thereafter, about June 20, 1946, according to plaintiff's testimony, he went to defendant's office and asked defendant if he would be interested in selling the La Cienega property only. He told defendant that he could pay $15,000 cash for it but that in order to do so it would be necessary for him to sell the "Valley Ranch"; that defendant thereupon told him to contact Richards, his representative, who would act for him in such sale and would handle the negotiations for him. Plaintiff then testified that he contacted Richards and that Richards told him defendant had authorized him to make the sale of the La Cienega property for $15,000 cash; that on July 2, Richards directed the plaintiff to go to the title company and have Mr. Baxter, an escrow agent, prepare the escrow; that he also told Richards that he was selling the "Valley Ranch" in order to raise the purchase price for the La Cienega Ranch; that immediately thereafter plaintiff went to the title com-

pany and discussed the proposed sale with Mr. Baxter, who prepared escrow instructions which were then and there signed by the plaintiff; that the deposit of $500, which plaintiff had previously placed with the escrow company under the former escrow, which had been previously canceled, was transferred into the new escrow; that on July 12, at the instance of Richards, he placed an additional $1,500 into this escrow.

It appears that the escrow instructions of July 2, 1946, signed only by plaintiff, were not sent to defendant until July 29. By letter dated August 5, 1946, addressed to the title company, defendant replied that he was not executing the proposed escrow instructions. It reads in part as follows:

"I do not desire to enter into any long term escrow on this property . . . If Mr. Sackett wishes to purchase the subject property, he can deposit with you in cash the full amount of the purchase price. Upon notice from you that you are ready to pay me said purchase price, I will send you a duly executed grant deed in the same form heretofore proposed by me.

"This letter is not to be construed as an option, nor is it an agreement to sell. I reserve the right to sell the subject property or otherwise dispose of it without notice. It is my intention merely to inform you the conditions under which Mr. Sackett might be able to purchase the lands.

"I notice in the proposed escrow instructions that Mr. Sackett is attempting to recoup the $500.00 deposited by him with you under the terms of an escrow agreement dated March 14, 1946, which was terminated by me as of April 24, 1946. As stated in my letter . . . all sums so deposited by him are to be applied first to the payment of your charges and the remainder remitted to me."

It appears that on August 27, 1946, defendant entered into an escrow agreement with one Nina Anderson, selling the La Cienega Ranch to her for the sum of $15,000. Prior to this date plaintiff disposed of the Valley Ranch and on August 26, went to the title company and presented Baxter with a draft in the sum of $14,611.03. The escrow agent then read to plaintiff the defendant's letter of August 5, and plaintiff was informed that defendant was negotiating with others relative to the possible purchase of the same property. According to plaintiff's testimony, the escrow agent called defendant on the telephone and defendant told the escrow agent not to accept plaintiff's check unless Nina Anderson, who was also interested in the purchase, should fail to pay the agreed purchase price by 2 o'clock of the following afternoon, and the check

for $14,611.03 was returned to plaintiff; that plaintiff immediately contacted Richards and tendered the check to him; that a day or so later the check was returned to plaintiff by Richards with the explanation that the defendant Starr had entered into a purchase and sale agreement with a party by the name of Anderson and therefore would not complete the sale of the La Cienega Ranch to plaintiff.

It is apparent from the record that defendant did not, at any time, in any writing, authorize or employ Richards as his agent to sell or convey the property. It is likewise clear that the defendant never signed the escrow instructions of July 2, 1946.

Defendant Starr denied generally plaintiff's claimed conversation had with him in reference to an agreement of sale of the La Cienega Ranch, as indicated by plaintiff. He testified that plaintiff came to his office in May, 1946, and that he told him that he was ''not desirous of doing business with him or his father-in-law''; that ''. . . in order to get into my good graces that he should instruct Mr. Baxter . . . to release the $500.00; that I understood that was to be as a forfeiture in the escrow of March''; that he never told him that Mr. Richards had any authority to enter into the negotiations for him; that he never heard about plaintiff's ''Valley Ranch'' until he heard plaintiff's testimony in the courtroom; that he never asked him to sell it or knew anything about such a sale; that he first learned of the proposed escrow of July 2 when the copy came to him by letter of transmittal from Mr. Baxter on July 29; that he never learned that plaintiff had left $1,500 additional deposit with the title company in reference to this escrow; that on July 30, he had a telephone call from Richards in which he ''probably talked to me about the deal'' but that he told him that he was not interested in dealing with Sackett or the Stewarts; that he did tell Baxter, when he called in reference to the Anderson deal, that if the Anderson deal did not go through he would think it over and let him know whether he would deal with Sackett or not; that Baxter did call him and tell him that Sackett was in with a check and wanted to deposit it in connection with the July 2 escrow and that he told him that he was not at all interested in that, that there was a deal with Nina Anderson and that if the Anderson deal did not go through he would consider Sackett's proposition.

The real estate broker, Richards, testified generally that he did act as agent in the escrow agreement of March, 1946, but

that plaintiff failed to make the payments under that agreement and the escrow was canceled; that in June, 1946, plaintiff asked him to find out if he could buy the La Cienega Ranch from defendant Starr; that Starr told him he would be willing to sell it if it brought $15,000 cash, but he did not want to give an option on it and if plaintiff wanted to put that amount up he could have it; that Starr said when the cash was "put up" he was to be notified and the deal would go through "if there was no other deal pending"; that on July 2, plaintiff came to see him; that he did not have time to go with him to the title company and that he told him to see Mr. Baxter and make a deposit in escrow and Mr. Baxter would handle the deal for him; that he had no knowledge that plaintiff was selling his "Valley Ranch" for the purpose of supplying the money for the purchase of the La Cienega Ranch or otherwise; that at no time did he have any authority in writing from defendant Starr respecting the sale of any of these lands. He denied generally all of the claimed conversations plaintiff had with him in respect to the sale of the La Cienega Ranch except as above noted.

It is apparent that the escrow instruction agreement of July 2, 1946, was prepared by the title company at the instance and suggestion of plaintiff Sackett. Defendant Starr never, at any time, signed this agreement or consented to its execution. Plaintiff's cause of action, therefore, cannot be predicated upon this document.

██ Under section 1624 of the Civil Code a contract is void unless it is in writing and subscribed by the party to be charged or by his agent, where it is for the sale of real property, and if signed by an agent, the authority of the agent must be in writing subscribed by the party sought to be charged. ██ Mutual consent is necessary to the existence of any contract, and one cannot be made to stand on a contract to which he never consented. (*Cummings* v. *Ross,* 90 Cal. 68 [27 P. 62].) There can be no contract unless the minds of the parties have met and mutually agreed. (*Marx & Rawolle* v. *Standard Soap Co.,* 42 Cal.App. 32 [183 P. 225]; *Los Angeles etc. Co-operative Assn.* v. *Phillips,* 56 Cal. 539; 6 Cal.Jur. § 24, p. 43.) ██ There must be an offer or proposal and an acceptance of the same. (*Hannah* v. *Steinman,* 159 Cal. 142 [112 P. 1094]; 6 Cal.Jur. § 33, p. 58.) ██ It is the general rule that authority to an agent to sell is simply authority to find a purchaser, but does not authorize the agent to execute

a contract to convey. (*Grant* v. *Ede*, 85 Cal. 418 [24 P. 890, 20 Am.St.Rep. 237]; *Lambert* v. *Gerner*, 142 Cal. 399, 403 [76 P. 53]; *Wilson* v. *White*, 161 Cal. 453, 460 [119 P. 895]; *Salter* v. *Ives*, 171 Cal. 790, 792 [155 P. 84]; *Holland* v. *McCarthy*, 173 Cal. 597, 600 [160 P. 1069]; *Gold* v. *Phelan*, 58 Cal.App. 471, 476 [208 P. 1001]; *Holway* v. *Malloy*, 70 Cal. App.2d 317, 320 [160 P.2d 893].)

The letter of August 5 does not bring plaintiff within the provisions of section 1624 of the Civil Code. It refers to the instructions signed by plaintiff as the "proposed instructions" relating to a "possible purchase"; and states that defendant was "not executing the proposed escrow instructions"; that if he desired to make the purchase he could deposit the cash with the title company. The letter was only addressed to the title company and not to plaintiff, and specifically stated it was not to be construed as an option nor as an agreement to sell, and defendant specifically reserved the right to sell the property to others without notice and provided that the $500 paid into the first escrow was not to be considered a part of the purchase price.

Specific performance will not be compelled unless there is a contract containing all the material terms. (*Beal* v. *United Properties Co.*, 46 Cal.App. 287 [189 P. 346]; *Everts* v. *Johnston*, 34 Cal.2d 6 [206 P.2d 633]; *Masten* v. *Griffing*, 33 Cal. 111; Civ. Code, §§ 1550, 1565; 6 Cal.Jur. § 6, p. 19.)

The letter clearly indicates that the defendant did not mean by his letter that there was to be a clear and unequivocal offer which would be accepted by the deposit or tender of the money. The trial court specifically found: (1) that the defendant did not, in writing, promise to sell or convey to plaintiff, nor did he make any offer to sell or convey to him "the above-described property"; (2) that it is not true that in reliance upon any promise or offer of defendant, plaintiff tendered any sum of money for the property; (3) that it is not true that defendant, at any time, in any writing, authorized or employed Richards, as defendant's agent, to sell or convey the property. The evidence supports the trial court's finding that such claimed agreement was incapable of being specifically enforced, under the law applicable.

As to the second cause of action the court found that it is not true that by any statement, representation, promise, concealment or conduct, defendant, at any time, personally or through any agent, induced plaintiff to sell his "Valley Ranch" or to raise or obtain funds for the purchase of the real

property described or to change his position in any way; and that it is not true that plaintiff sustained any damage.

■ Plaintiff's testimony is that the sale of the "Valley Ranch" was made for the purpose of purchasing the La Cienega Ranch and that in reliance upon the representations made by the defendant, he was induced to change his position to his detriment and that defendant had *knowledge of this fact* and that he was therefore estopped from claiming the invalidity of the contract, citing such cases as *Grant* v. *Long,* 33 Cal.App.2d 725 [92 P.2d 940]; *Seymour* v. *Oelrichs,* 156 Cal. 782 [106 P. 88, 134 Am.St.Rep. 154]; *Wilson* v. *Bailey,* 8 Cal.2d 416 [65 P.2d 770]; *Notten* v. *Mensing,* 3 Cal.2d 469 [45 P.2d 198]; *Bacon* v. *Kessel,* 31 Cal.App.2d 245 [87 P.2d 857]; and *Sessions* v. *Southern California Edison Co.,* 47 Cal. App.2d 611 [118 P.2d 935].)

The testimony of the defendant Starr and of the broker Richards, is in conflict with the testimony of plaintiff in this respect.

In *Albany Peanut Co.* v. *Euclid Candy Co.,* 30 Cal.App.2d 35, 38 [85 P.2d 471], the rule is succinctly stated and it emphasizes the fact that before estoppel can arise it must be shown that pursuant to the terms of the contract, and induced by the representations of the opposing party, one must have changed his position to his detriment, and the intent to make such change *must be known at the time* to the one making the representations. The cases relied upon by plaintiff are distinguishable in this respect. Defendant Starr and the broker Richards each testified that they had no knowledge of the fact that plaintiff was selling his Valley Ranch for the purpose of securing money and making a deposit on the La Cienega Ranch, and the trial court was the one to determine this fact. As indicated by its findings, it decided the conflict adversely to the plaintiff. There is evidence to support the trial court's finding and it cannot be disturbed on appeal. (*Chichester* v. *Seymour,* 28 Cal.App.2d 696 [83 P.2d 301]; *Dickey* v. *Pattison,* 92 Cal.App.2d 659 [207 P.2d 1081].)

Judgment affirmed.

Mussell, J., concurred.