[Civ. No. 20019.  Second Dist., Div. Two.  Nov. 22, 1954.]

ELEANOR TYNAN PUTMAN, Respondent, v. ARTHUR A. CAMERON, Appellant.

Overton, Lyman, Prince & Vermille for Appellant.

Loeb & Loeb, Allen E. Susman and Herman F. Selvin for Respondent.

MOORE, P. J.—The primary question for decision is whether an agreement was made prior to the commencement of this action, settling the controversy of the parties.

April 15, 1947, respondent leased to appellant her valuable home at Pacific Palisades for one year. At the expiration of the term, they agreed upon a continuance of the lease on a month-to-month basis. The lease was terminated and possession was restored to respondent in February 1950. At different times she inspected her property with certain employees of appellant and checked her inventory. First his secretary, then his accountant made notes which were received in evidence. Finally, appellant met respondent on the premises February 10. They made a complete tour of the grounds and building; discussed the damage and destruction, payments for rent not made, what she demanded, what he would do. At the conclusion of their interview, appellant testified, he said he wished "to close our transaction and consider all of our accounts settled in full . . . and if that was satisfactory with her, I would release the $933 check and we would consider both of our accounts satisfied. . . . Her reply was, 'Well, if you will do that, that is a deal! . . . She advised me she was happy about it and we shook hands."

But respondent promptly concluded that no effective contract had been made; no promise by her to accept anything definite in satisfaction of his entire debt; no disposition of many important items in dispute. Evidently intending to cement his attempt at a contract, he wrote her a letter of "confirmation" from which he omitted many items they had discussed. They had not agreed upon the same thing in the same sense.

After fruitless demands, she demanded damages in the sum of $5,000 for waste "maliciously" committed, damage to the realty and destruction of her movables therein. By appropriate pleadings, she sued on such claim and was awarded a judgment for $4,612.99. Appellant seeks a reversal on the ground that there "is not sufficient evidence to support

findings XXII and XXIII.* He particularizes his assignments by asserting that the following portions of such findings are not supported by the evidence:

1. That it was not true that the parties entered into any agreement to settle or compromise plaintiff's claims;

2. That various offers of compromise and settlement were made, but that none of such offers was accepted;

3. That all attempts at compromise and settlement were abortive and of no force and effect;

4. That the amount of the invoice referred to in finding XXIII ''is'' justly due and owing from defendant to plaintiff; and

5. That the receipt of said invoice was not a bar to a release or discharge of any of the matters claimed in the complaint.

6. Appellant also assigns as error the failure of the court below to find affirmatively on the allegations of appellant's second affirmative defense.

7. Appellant also assigns as error the clerical omission in the judgment whereby the amount stated therein as $4,612.99 was not reduced by $483 to the sum of $4,129.99.

The entire argument revolves about the finding that *it is not true that in February, 1950, the parties entered into any . . . agreement* to settle or compromise any of plaintiff's claims against defendant for breach of said written lease as extended.

---

*''XXII.

''It is not true that in February, 1950 or at any other time the parties hereto entered into any verbal agreement, or any agreement, to settle or compromise any of plaintiff's claims against defendant for breach of said written lease as extended, for damages to the leased premises, for damages to the furniture, furnishings and fixtures therein, or at all. It is true that various offers of compromise and settlement were made by each of the parties hereto to the other, both during February, 1950 and thereafter, but that none of said offers was accepted by the offeree and all such attempts at compromise and settlement were abortive and of no force or effect herein.

''XXIII.

''It is true that defendant paid to plaintiff the amount of plaintiff's invoice for rent of the leased premises for January, 1950 and for certain utility and gardener charges and other incidental expenses incurred but not paid by defendant during several months prior to January, 1950. The amount of said invoice, as submitted by plaintiff, was true and correct except for the sum of $5.00 per month, or a total of $10.00 for gas charges, which amount defendant had not undertaken to pay under the provisions of said lease, as extended, and which amount is included in the sum of $165.00 set forth in finding No. XXI hereof. With that exception, the amount of said invoice is justly due and owing from defendant to plaintiff, and receipt thereof was not, nor was intended by plaintiff as, a bar to or release or discharge of any of the obligations of defendant of which complaint is made herein.''

### FACTS FOUND AND PROVED

The court found and the facts proved are that the lease contained appropriate covenants to keep the premises in good repair; to restore fixtures and equipment in as good condition as when received, reasonable wear and tear excepted; that such covenants were violated; that extensive damages had been done to the house and the movables; that 33 separate items of damage and loss, defacing the walls and paper, breaking furniture and chinaware and losing lamps, rendered the premises unfit for tenancy for a month; that after appellant had vacated, a check of the inventory was made with appellant's secretary and later with his accountaint, both of whom reported their findings to appellant. After their joint survey and inspection, they agreed upon some items while as to some others a decision was deferred to a later time. A list of all missing, broken or damaged items was to be prepared. Appellant did not say anything about owing any money to respondent or anything about settling accounts between them; said nothing about checking the items of losses listed by appellant or about an offset against the claims of respondent.

Some 10 days after the parties had met at the home, appellant wrote respondent as follows:

"Dear Eleanor:

"This letter is to confirm my verbal agreement concerning certain things to be done to your house. I agreed with you that I would pay for the following:

"1—Repainting the green and yellow bedrooms.

"2.—Refinishing the window sill in the front room and the mantel in the living room that had the nail holes in it.

"3—Repairing the wall paper in the babies' room.

"4—Painting the wall in the babies' bath where the fabric was pulled from it.

"5—Painting the servants' bath.

"6—Repay you the reasonable value of the pieces of china, etc., that were broken or lost.

"You were to get estimates on the costs of these and let us know about this work to be done, as soon as possible, together with the lost items.

"It was also understood that you would be allowed to purchase the living room draperies at three-fourths of their original cost to us if you wanted to keep them and also the Maytag washer on an exchange basis for the Bendix if we could use it.

"Also, it was agreed that after February first I would pay

you $25 per day additional rent until such time as the house was vacated by us. We vacated the house Thursday afternoon, February 2nd, so in addition to the above-mentioned items, we will owe you the sum of $50 for two extra days' rent.

"Mrs. Seymour will send you a statement of the cost of the draperies.

"As soon as you have received your estimates, please advise us and we will let you know without delay.

"Kindest regards.

"Very truly yours,

"Arthur A. Cameron"

### No Settlement Made

Appellant contends that such letter was confirmatory of an agreement of settlement. Such document is an ex parte, self-serving declaration. His contention was with good reason rejected by the trial court. Two days after writing the letter, his secretary wrote respondent: "At Mr. Cameron's request I am sending you herewith Cannell and Chaffin's estimate covering the draperies. The paid bill is here in the office. The pencilled notations under the asterisks are mine, to give you the complete cost including the tax paid."

Respondent answered neither letter but her counsel on March 10 wrote appellant that his letter of February 21 "is quite inaccurate in setting forth the terms of the alleged 'verbal agreement,' since many of the items of damage and loss mentioned in this letter are not referred to in yours of February 21, 1950, although I am informed that the matters set forth herein were all agreed to by you." Having received no response to that communication, on March 24 respondent wrote him that "it has been our hope that we might adjust this controversy amicably but in the absence of your co-operation, you leave us no alternative but to proceed by way of processes of the courts."

The language of appellant's letter is clear in that it listed the items for which appellant intended to pay. Respondent "would be allowed to purchase the draperies . . . if you wanted to keep them, and also the Maytag washer on an exchange basis for the Bendix if we could use it." While no list of the lost items was yet to be prepared, appellant made no promise as to what he would do about them. He specified in his letter only six items of loss for which he would be liable while the proof showed that about 25 items had been dis-

cussed on the day they met at the house. After his attention had been called to this discrepancy, he indicated no intention of rewriting or modifying his letter.

While respondent's discussion with appellant was confined to the condition of her house and its appurtenances, and although the loss of and damage to her furnishing and fixtures had been detailed to the secretary and accountant of appellant, no mention of them was made at the conference of February 10. Therefore, it cannot be said that the parties ever had any arrangement concerning them. As to those that were discussed, a definite agreement was deferred as to some while, as to others, respondent was to secure cost estimates. Neither at the conference nor at any other time did appellant ever say how the damages would be computed if the estimates of respondent should prove unsatisfactory. While he was to ascertain the number and kind of missing articles that had been removed with his own, he never disclosed to respondent the results of his investigation. They discussed the purchase of certain drapes by respondent, but whether she would or would not buy them was left open for decision to a time after she had received specific prices on them. No definite agreement with respect thereto was ever reached. Although appellant claims that a part of their settlement was his promise to pay a disputed invoice in the sum of $933, neither by his letter nor by any other means did he refer to that invoice or to whether his agreement to pay it would constitute payment of all or any claims made against him.

The gist of a compromise of a disputed controversy is the mutual intention of the disputants that they are resolving their differences. (*Salter* v. *Marsh,* 94 Cal.App. 124, 138 [270 P. 735].) In the absence of proof of a compromise, the court is not at liberty to assume that the parties have reached an agreement of settlement. (*Burgess* v. *California Mut. Bldg. & Loan Assn.,* 210 Cal. 180, 186 [290 P. 1029].)

The finding that no settlement of their differences was made on the occasion of their conference at the home is supported by the testimony of respondent which definitely proves there was neither agreement nor intention that the two had come together for the purpose of making a settlement. Consequently, the finding is conclusive. (*Dominguez Estate Co.* v. *Los Angeles Turf Club, Inc.,* 119 Cal.App.2d 530, 544 [259 P.2d 962].) Appellant's promise to pay for a few specified items of damage is by no means proof that he had induced respondent to accept his statements in full satisfaction of her

demands. Neither the contradictory evidence of appellant nor inferences fairly deducible from respondent's testimony can be invoked to defeat the findings based upon Mrs. Putman's proof. ▇ In determining justiciable facts it is not how many the witnesses or how long they talk, but which witnesses are so cloaked in the armor of truth as to carry conviction of the ultimate fact. (*Rice* v. *California Lutheran Hospital*, 27 Cal.2d 296, 301 [163 P.2d 860].)

▇ There was no definite offer in appellant's letter of February 21. He wrote, "You were to get estimates on the costs of these [the six items he mentions] and let us know about this work to be done." The court could fairly determine from that sentence that from the estimates to be forwarded some other action would follow. They had not agreed upon the amount to be paid; if so, what was the need for "estimates"? He would "repay you the reasonable value of the pieces of china, etc." but he did not specify the number of pieces, or what were the *cetera* or who would appraise the furniture and chinaware to fix their reasonable values. He did not say he would pay for any plate, utensil or item of broken furniture or whether he deemed himself liable for their loss. His mention of respondent's exchange of a Magtag washer for a Bendix is purely ornamental. He did not know whether "we could use it" or whether a difference would be paid by either party.

▇ Where claim of a contract is made and one item is left uncertain in the memorandum of terms or in the discussion, the entire contract is inchoate and no one is bound thereby. "It is essential to the validity of a contract that the parties should have consented to the same subject matter in the same sense . . . Where there is a misunderstanding as to the terms of a contract, neither party is liable in law or equity." (*Meux* v. *Hogue*, 91 Cal. 442, 448 [27 P. 744]; *Los Angeles Immigration & Land Co-op. Assn.* v. *Phillips*, 56 Cal. 539, 546; *Van Slyke* v. *Broadway Ins. Co.*, 115 Cal. 644, 646 [47 P. 689, 928].) ▇ Where the minds of parties litigant have not met upon an essential element of the purpose to be achieved, and they have failed to specify the means for determining such element but have indicated that future negotiations are necessary to effect an agreement, the abortive effort, however labeled, is void. (*Avalon Products, Inc.* v. *Lentini*, 98 Cal.App.2d 177, 179 [219 P.2d 485]; *Talmadge* v. *Arrowhead Reservoir Co.*, 101 Cal. 367, 371 [35 P. 1000].)

Appellant, herein, being unable to determine the amount he was to pay until after receipt of respondent's estimates and his action thereon had not truly agreed with her on the sum to be paid to her. Not even Mr. Cameron testified to an agreement based upon the estimates to be furnished.

Appellant appears to be oblivious of Mrs. Putman's testimony which named many more items of damage and loss than those enumerated in appellant's letter. His callous disregard of her statements of the facts was tantamount to an open repudiation of their joint efforts to effect a compromise.

His failure to mention in his letter the numerous items they had discussed and his insistence that performance would be made only according to his erroneous interpretation of their discussion was the equivalent of a total repudiation of their joint efforts. (*Cobb* v. *Pacific Mutual L. Ins. Co.,* 4 Cal.2d 565, 568 [51 P.2d 84].) In *Marx & Rawolle* v. *Standard Soap Co.,* 42 Cal.App. 32, 36 [183 P. 225], the parties had negotiated by telegraph. Thereafter, a formal document was presented to the defendant for execution. But, because it contained two provisions not theretofore agreed upon, the defendant justifiably rejected it and renounced the transaction. Because (1) neither party understood that the telegrams constituted the final and binding contract and (2) the final writing sent to the defendant varied in material respects from the terms apparently agreed upon by telegrams, the defendant was "in its rights both in refusing to execute the same and in withdrawing from the transaction." (See *Thompson* v. *Municipal Bond Co.,* 23 Cal.App.2d 402, 411 [73 P.2d 274].) Appellant insisted that a compromise agreement had been effected at the time of his conference with respondent but his statement of such agreement is far less extensive than that testified to by her. The court found, in conformance with her testimony that he rejected the terms she declared to have been agreed upon. That was an effectual rescission of whatever their agreements might have been.

Appellant contends that finding XXIII saying respondent's last invoice of $933 less $10 "is" justly due and owing from defendant to plaintiff is unsupported. Such contention is without merit. The finding is that with the exception of the $10 the invoice is correct and had been paid by defendant. The word "is" was used inadvertently for "was" in an interlineation.

Finally, appellant asserts that while by an order of January 15, 1953, the judgment was modified by reducing the sum

from $4,612.99 to $4,129.99, a reduction of $483, yet the judgment does not reflect the amendment. The modification was stipulated to by both parties. Consequently, the judgment should be worded to conform with the order.

It is therefore ordered that the judgment be modified so as to authorize the recovery of $4,129.99.

Otherwise, it is affirmed. Respondent to recover costs on appeal.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied December 7, 1954, and appellant's petition for a hearing by the Supreme Court was denied January 19, 1955.