[Civ. No. 13490. Third Dist. Nov. 3, 1972.]

FREDERICKSON & WATSON CONSTRUCTION CO.,
Plaintiff and Appellant, v.
DEPARTMENT OF PUBLIC WORKS, Defendant and Respondent.

**COUNSEL**

Orr, Wendel & Lawlor and Eugene K. Lawlor for Plaintiff and Appellant.

Harry S. Fenton, Kingsley T. Hoegstedt, Orrin F. Finch, Joel G. Philip and John R. Bell for Defendant and Respondent.

## OPINION

**EATON, J.**[*]—Plaintiff appeals from the judgment after the trial court sustained without leave to amend defendant's demurrer to plaintiff's first amended complaint.

Plaintiff, on August 31, 1966, entered into a contract with defendant to build a portion of state highway. Such contract consisted of (a) standard specifications, (b) plans, and (c) special provisions. Also furnished to plaintiff was a document entitled "Mass Diagram," embodying certain results of earlier investigations of the construction site by defendant. The results of such investigations are referred to, and their effect defined by sections 2-1.03 and 2-1.04 of the standard specifications as follows: "2-1.03 Examination of Plans, Specifications, Contract, and Site of Work.

". . . . . . . . . . . . . . . . .

"The records of such investigations are *not a part of the contract* and are shown solely for the convenience of the bidder or Contractor. It is expressly understood and agreed that the Department assumes no responsibility whatsoever in respect to the sufficiency or accuracy of the investigations thus made, the records thereof, or of the interpretations set forth therein or made by the Department in its use thereof and there is no warranty or guaranty, either express or implied, that the conditions indicated by such investigations or records thereof are representative of those existing throughout such areas, or any part thereof, or that unlooked-for developments may not occur, or that materials other than, or in proportions different from those indicated, may not be encountered." (Italics added.)

"2-1.04 Mass Diagram.—If a mass diagram has been prepared for a project, it will be available to the bidders upon the following conditions:

"The swell or shrinkage of excavated material and the direction and quantities of haul or overhaul as shown on said mass diagram are for the purpose of design only, and in like manner as provided in Section 2-1.03, 'Examination of Plans, Specifications, Contract, and Site of Work,' concerning furnishing information resulting from subsurface investigations, *the Department assumes no responsibility whatever in the interpretation or exactness of any of the information shown on said mass diagram, and does not, either expressly or impliedly, make any guaranty of the same.*" (Italics added.)

---

[*]Assigned by the Chairman of the Judicial Council.

■ Plaintiff corporation constructed the highway. It alleges that in so doing it found the site lower than expected at one point, and elevated the road at that point by bringing in borrow material from a more remote point where, according to the mass diagram, no such excavation was contemplated. This action is for the added cost of moving such borrow material, in the amount of 170,454 cubic yards. Plaintiff pleaded three causes of action, but they all revolve around the contention that no excavation was required at the site where it was performed.

Initially, plaintiff corporation might have pleaded only the alleged deficiency of fill material at the construction site where it was needed. Plaintiff now argues that its third cause of action pleads a surveying error resulting in such a deficiency of fill material at the lower construction site. Incorporated by reference in such cause of action, however, are the allegations respecting the mass diagram and its provision that the fill material was not to be removed from the higher construction site. Thus, plaintiff makes plain that the actual gravamen of its action is that it had to remove the material, at added cost, from a site where the mass diagram contemplated such material should remain. The contract terms themselves, however, appear to have required the removal of the material, as provided in section 10-1.10:

"10-1.10 Earthwork.—Earthwork shall conform to the provisions in Section 19 of the Standard Specifications and these special provisions.

". . . . . . . . . . . . . . . . .

"The drainage channel and retention basin on the east side of freeway shall be excavated to the depths and widths shown on drainage plans and the material excavated placed in the lower part of embankments between Avenue I and Avenue D.

"*The section between Avenue M and Avenue L shall be excavated according to plans, profiles and typical sections and the material hauled north and used for topping of fills or as Class 5 aggregate subbase material in structural section as directed by the Engineer.*

"The imported borrow shall be used for embankment north of Station 4736+00 and to complete embankments where insufficient material is available from excavation.

"The provisions in Section 19-7.03 of the Standard Specifications call for reserving space in embankments for excavated material before placing imported borrow. The Contractor shall reserve space southerly from Station 4736 for excavated material.

"Selected material for use in the structural section shall be obtained from the cut section between Avenues 'M' and 'L' as directed by the Engineer. . . ." (Italics added.)

The trial judge concluded that the mass diagram was no part of the contract terms, and sustained demurrer to the complaint. In view of sections 2-1.03 and 2-1.04 of the standard specifications above quoted, his conclusion was correct.

The language of that section goes considerably beyond a general disclaimer of the accuracy of factual statements contained *in* the contract terms. This latter type of disclaimer has been held insufficient. (*E. H. Morrill Co.* v. *State of California* (1967) 65 Cal.2d 787 [56 Cal.Rptr. 479, 423 P.2d 551].) However, there must be *some* language pointed enough to enable the state effectively to say to bidders: "We will not be bound by our preliminary site investigation results." The standard specification quoted above appears appropriate to that end.

■ "That an alleged warranty may be disclaimed, especially where the statements alleged to constitute the warranty are neither positive nor specific, is made clear in *MacArthur Bros. Co.* v. *United States,* 258 U.S. 6 [66 L.Ed. 433, 62 S.Ct. 225]." (*Wunderlich* v. *State of California* (1967) 65 Cal.2d 777, 786 [56 Cal.Rptr. 473, 423 P.2d 545].)

It is thus possible by express disclaimer to negate an erroneous statement concerning the subject matter of a contract. (*Roberts Distrib. Co.* v. *Kaye-Halbert Corp.* (1954) 126 Cal.App.2d 664, 669 [272 P.2d 886].)

■ " . . . [A] warranty will not be implied where the contract expressly stipulates against its existence." (17A C.J.S., § 342, p. 327; accord *Land* v. *Del Mar Turf Club* (1953) 120 Cal.App.2d 829 [262 P.2d 54].)

■ "Mutual consent is necessary to the existence of any contract, and one cannot be made to stand on a contract to which he never consented." (*Sackett* v. *Starr* (1949) 95 Cal.App.2d 128, 133 [212 P.2d 535].)

Earlier amendment having been allowed, and it not appearing that further pleading could alter plaintiff's position, demurrer was properly sustained without leave to amend.

Judgment of dismissal is affirmed.

Richardson, P. J., and Friedman, J., concurred.