[Civ. No. 22438. Third Dist. Oct. 18, 1983.]

CHARLES HALPER et al., Plaintiffs and Respondents, v.
JOSEF CHARLES FROULA, Individually and as Executor, etc.,
Defendant and Appellant.

## COUNSEL

Desmond, Miller, Desmond & Bartholomew, Stephen James Wagner and William W. Nolan for Defendant and Appellant.

Don Edwin Raney for Plaintiffs and Respondents.

## OPINION

**PUGLIA, P. J.**—Plaintiffs Charles and Leo Halper (referred to individually by name or collectively as plaintiffs), the natural children of Charles Halper, Sr., deceased, brought suit to enforce an oral agreement between Charles, Sr., and Irene Halper (plaintiffs' stepmother). The alleged agreement provided the surviving spouse would devise and bequeath all of their combined property to plaintiffs, plaintiffs' sister Virginia,[1] and defendant, the natural son of Irene. Charles, Sr., died in 1970, and pursuant to the terms of a will he executed in 1958, his entire estate passed to Irene. Irene died in 1980, but a will she executed in October 1974 left her entire estate to defendant. The trial court found the alleged oral agreement did exist, that Irene breached the agreement and that the breach was inequitable. Judgment awarded plaintiffs $36,000 to be divided equally between them, and also provided that defendant held in constructive trust for plaintiffs an undivided one-half interest in three parcels of realty located in Arizona. Defendant appeals.[2] We affirm.

Charles, Sr., and Irene married in April 1943. At the time of the marriage only Charles, Sr., had any estate of value. Charles, Sr., had three children (plaintiffs and Virginia) by a previous marriage and defendant was Irene's son by a previous marriage. No children were born during the marriage. The couple remained married until April 1970, when Charles, Sr., died.

Following the death of Charles, Sr., Irene executed three wills, the last of which executed at the request of defendant[3] left her entire estate to him. During the 10-year period following her husband's death, Irene placed var-

---

[1]For reasons unexplained in the record, Virginia was not a party to the action.

[2]Defendant purports to appeal from the "judgment" entered by the trial court on October 8, 1982. On that date, the trial court rendered from the bench its "Announcement of Intended Decision," which is not a judgment and from which no appeal may be taken. (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 312, p. 3119; Judgment, § 4, p. 3184.) In the interest of justice, we treat the notice of appeal as having been taken from the amended judgment entered December 3, 1982.

[3]The first will, executed in Arizona shortly after the death of Charles, Sr., devised and bequeathed the estate one-third to plaintiffs and Virginia, and two-thirds to defendant. The second will, executed in Arizona in 1971, left the entire estate to defendant. Defendant testified he urged his mother to execute the third will because she had become a California resident. He testified he drove his mother to the attorney's office, but had no discussions with her relative to the terms of the will until after it was executed.

ious assets into joint tenancy accounts with defendant. Although defendant used the funds in these accounts for his personal enjoyment, the trial court found Irene created these accounts for business purposes and convenience and did not intend to make a gift to defendant of any interest in these accounts. Irene did make various other gifts to defendant and his family. The total amount of assets placed in joint tenancy and gifts was $72,000, one-half of which, as noted, was ordered paid to plaintiffs.

## DISCUSSION

Plaintiffs alleged, and the trial court found, that sometime during 1958 Charles, Sr., and Irene orally agreed the first spouse to die would leave his or her estate to the other spouse, and thereafter the survivor would leave the combined estate to the children (plaintiffs, Virginia, and defendant) in equal shares. Charles testified he was told by his father and Irene that they were going to take an extended vacation in 1959 and had each drafted a will so as to not "leave any loose ends, . . ." Charles was told that according to the terms of the wills, "whichever [parent was] to pass on, the other then would have the estate," and when that person passed on, the estate would be "divided equally among the four children."[4]

Leo's testimony mirrored that of his brother, except that Leo was told by his father and Irene of the terms of the agreement on more than one occasion. Leo also testified that at the time of his father's funeral, Irene reiterated the agreement, stating that upon her death the entire estate would be "divided equally amongst the children."

Katherine Halper, plaintiffs' aunt, testified she was told by Charles, Sr., once during 1958 and again in 1969 that he and Irene had each executed a will, the terms of which provided the surviving spouse would be given the entire estate, and upon the death of the surviving spouse, the estate would be divided among the four children. According to Katherine, Irene concurred in these statements.

In addition to the above testimony, a file card of the law firm which assisted Charles, Sr., in executing his 1958 will indicated that both he and Irene executed wills at that time.[5]

■ The foregoing testimony constitutes substantial evidence to support the trial court's determination that Charles, Sr., and Irene orally agreed the surviving spouse would leave the entire estate in equal parts to the four children. (Cf. *Crail* v. *Blakely* (1973) 8 Cal.3d 744, 747-750 [106 Cal.Rptr. 187, 505 P.2d 1027].)

---

[4]Charles also testified that his father's previous will, revoked by the 1958 will, devised his estate one-third to Irene and two-thirds to Charles, Leo, and Virginia.

[5]Irene's will was not contained in the file, however, and no will executed by her in 1958 was presented at trial.

■ Defendant asserts that even if there were an agreement, the agreement was not definite in its terms to allow specific performance. We disagree. This is not a case where the agreement provided the estate would "be divided . . . fifty-fifty" between "his relatives and her relatives." (*Harris* v. *Larter* (1940) 36 Cal.App.2d 587, 593-594 [97 P.2d 1035].) To the contrary, it is difficult to determine what could be more specific than an agreement which provides that upon the death of the surviving spouse, the entire estate will be divided equally among the four children raised by the couple.

■ Defendant argues Irene did not breach the agreement by giving $72,000 to him and his children prior to her death. He contends such gifts were reasonable. Again we disagree.

Approximately $45,000 of the $72,000 consisted of assets Irene placed in joint tenancy with defendant. As noted previously, the trial court found Irene created the joint tenancy accounts for business and convenience purposes, and did not give defendant any interest in these accounts. Clearly, defendant was accountable for these funds. Approximately $27,000 in gifts was made by Irene to defendant and his family. The trial court could properly require defendant to account for these gifts. While Irene had the right to use the estate for her comfort and support during her lifetime, giving away the property is not a proper use and enjoyment of the estate by the life tenant. (*Hill* v. *Thomas* (1955) 135 Cal.App.2d 672, 677-681 [288 P.2d 157], and authorities cited therein.)

Defendant asserts the court erred in applying estoppel to circumvent the statute of frauds because plaintiffs failed to plead estoppel. This assertion is without merit. ■ "Where facts themselves constituting estoppel appear in the pleadings, estoppel is adequately pleaded [citation]." (*Anderson* v. *City of La Mesa* (1981) 118 Cal.App.3d 657, 660 [173 Cal.Rptr. 572].) Plaintiffs' complaint is replete with facts alleging the making of the oral agreement to leave the property to the children upon the death of the survivor; the making of a will by Charles, Sr., pursuant to such agreement; the death of Charles, Sr., before either the will or the agreement was revoked; the acceptance by Irene of the benefits of the will; and Irene's revocation of the agreement and execution of a new will in violation of the agreement. "These facts clearly constituted a change of position and reliance on the agreement . . . sufficient to raise the estoppel." (*Notten* v. *Mensing* (1935) 3 Cal.2d 469, 477 [45 P.2d 198].)

■ Defendant asserts that as his children were not parties to the action, the trial court erred in awarding plaintiffs monies which prior to Irene's death she gave to defendant's children. We disagree.

Defendant testified that of the gifts made by Irene, approximately $15,000 was to his children, that these monies were placed in an irrevocable trust

for the benefit of the children, and that defendant was trustee for the trust. The evidence indicates, however, that notwithstanding the "irrevocable" nature of the trust, defendant revoked the trust and used the funds as a down payment for a residence for himself and his family. Whatever interest defendant's children may have once had in these funds, at the time of trial these funds were in the sole possession of defendant, and at least in part were funds rightfully belonging to plaintiffs.[6]

Finally, defendant urges the judgment be reversed because indispensable parties were not joined in the action. This argument is equally without merit.

■ Notwithstanding defendant's contention to the contrary, Virginia was not an indispensable party. Code of Civil Procedure section 389, as amended in 1971, sets forth the general principles as to compulsory joinder of parties. This section "limits compulsory joinder to those situations where the absence of a person may result, as a practical matter, in substantial prejudice to that person or to the parties already before the court." (*Kraus v. Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 365, fn. 7 [140 Cal.Rptr. 744].) Defendant has suggested no facts which demonstrate prejudice either to Virginia or to himself as a result of her nonjoinder in the action. Indeed, there could be no prejudice. The action simply determined plaintiffs' right to share in the estate of their father and Irene. Such determination had no effect on Virginia's right to share in the estate and certainly has not resulted in prejudice to defendant.

Moreover, even if Virginia were an "indispensable" party, the judgment need not be reversed. ■ The law in this state is now settled that the failure to join an "indispensable" party is not a "jurisdictional defect" in the fundamental sense; even in the absence of an "indispensable" party *the court has the power to render a decision as to those parties before it which will stand.* (*Kraus v. Willow Park Public Golf Course, supra,* 73 Cal.App.3d at p. 364, and authorities cited.) "It is for reasons of equity and convenience, and not because it is without the power to proceed, that the court should not proceed with a case where it determines that an 'indispensable party' is absent and cannot be joined." (Fn. omitted; *Kraus v. Willow Park Public Golf Course, supra,* 73 Cal.App.3d at p. 364.)

In sum, defendant has failed to show (1) Virginia was an indispensable party, (2) the court was without jurisdiction to determine the matter, or (3)

---

[6]In any event, to the extent the children do have an interest in such monies, they may bring an action against defendant as trustee or against plaintiffs to assert their right to the funds.

Virginia's absence precluded the court from rendering an effective judgment between the parties before it. (See *King* v. *King* (1971) 22 Cal.App.3d 319, 326 [99 Cal.Rptr. 200].) Defendant's assertion the judgment be reversed is devoid of merit.

The judgment is affirmed.[7]

Carr, J., and Sims, J., concurred.

---

[7]At oral argument defendant acknowledged a stipulation at trial that he was being sued not only as executor but also individually. Accordingly, he has withdrawn his contention that the trial court erred in entering a judgment against him individually as well as executor.